*In the*

# United States Court of Appeals

*for the*

# Tenth Circuit

JEANETTA VAUGHN,

*Plaintiff-Appellee,*

v.

JP MORGAN CHASE & CO., et al.,

*Defendants-Appellants.*

On Appeal from the United States District Court for the District of Colorado
Case No. 1:23-CV-02266-CNS-NRN

## DEFENDANTS-APPELLANTS' OPENING BRIEF
### *[Oral Argument Requested]*

Naomi Beer
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Telephone: 303.572.6500
beern@gtlaw.com

Katherine M. Clemente
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
clementek@gtlaw.com

Elliot H. Scherker
Brigid F. Cech Samole
GREENBERG TRAURIG, P.A.
333 Southeast Second Avenue
Suite 4400
Miami, Florida 33131
Telephone: 305.579.0500
scherkere@gtlaw.com
cechsamoleb@gtlaw.com
miamiappellateservice@gtlaw.com

*Attorneys for Defendants-Appellants,*
*JPMorgan Chase Bank, N.A. and Trina Pelech*

# CORPORATE DISCLOSURE STATEMENT

JPMorgan Chase Bank, N.A. is a wholly owned subsidiary of JPMorgan Chase & Co., which is a publicly held corporation. JPMorgan Chase & Co. does not have a parent corporation and no publicly held corporation owns ten percent (10%) or more of its stock. However, The Vanguard Group, Inc., an investment advisor which is not a publicly held corporation, has reported that registered investment companies, other pooled investment vehicles and institutional accounts that it or its subsidiaries sponsor, manage or advise have aggregate ownership under certain regulations of 10% of more of the stock of JPMorgan Chase & Co.

Trina Pelech is an individual and does not have any parent corporation.

# TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT ........................................................ i

TABLE OF AUTHORITIES ............................................................... iv

STATEMENT OF RELATED CASES .......................................................1

JURISDICTIONAL STATEMENT .........................................................1

    A.   Basis for District Court's Subject-Matter Jurisdiction. ...................... 1

    B.   Basis for Court of Appeals' Jurisdiction. ...................................... 1

    C.   Filing Dates Establishing Timeliness of Appeal. .......................... 1

    D.   Finality of Judgment. .................................................................. 1

ISSUE PRESENTED FOR REVIEW ....................................................1

STATEMENT OF THE CASE.............................................................2

I.    THE ACCOUNT AGREEMENT. .................................................2

II.   THE INTERACTION AT THE CHASE BRANCH. .......................4

III. THE DISTRICT COURT PROCEEDINGS. .................................5

    A.   The Complaint. ........................................................................... 5

    B.   The Motion to Compel Arbitration.............................................. 6

    C.   The Order. .................................................................................. 7

SUMMARY OF ARGUMENT .........................................................11

ARGUMENT ...................................................................................12

I.    STANDARD OF REVIEW.........................................................12

II.   THE DISTRICT COURT ERRED IN DENYING THE MOTION TO COMPEL. .......................................................13

    A.   The District Court Correctly Found the Arbitration Provision to Be Broad but Failed to Apply the Correct Standards and Presumptions Based on That Finding........................................... 13

B. The District Court Erred in Ignoring Plaintiff's Allegations and Finding That the Claims Fall Outside the Scope of the Arbitration Provision. ..................... 20

C. The District Court's Error is Compounded by its Focus on Extrinsic Evidence. ......................................................................................................... 28

CONCLUSION AND RELIEF SOUGHT ............................................................ 31

STATEMENT REGARDING ORAL ARGUMENT ............................................. 32

CERTIFICATE OF COMPLIANCE ...................................................................... 33

CERTIFICATE OF SERVICE ............................................................................... 34

10TH CIR. R. 28.2(A) ATTACHMENT  (Order Denying Defendants' Motion to Compel Arbitration) ........................................................................................ 35

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*AT&T Techs., Inc. v. Commc'ns. Workers of Am.*,
475 U.S. 643 (1986) .......................................................................... 20

*Bator v. Mines Dev., Inc.*,
32 Colo. App. 320 (1973) ................................................................. 19

*Bowes-N. v. JPMorgan Chase Bank NA*,
No. 3:21-CV-803 JD, 2022 WL 2237146 (N.D. Ind. June 21, 2022) ............... 19

*Brown v. Coleman Co., Inc.*,
220 F.3d 1180 (10th Cir. 2000) ......................................................... 27

*Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.*,
636 F.3d 562 (10th Cir. 2010) .......................................................... 27

*Cavlovic v. J.C. Penney Corp., Inc.*,
884 F.3d 1051 (10th Cir. 2018) ................................................. *passim*

*Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*,
567 F.3d 1191 (10th Cir. 2009) ......................................................... 12

*Coleman v. JPMorgan Chase Bank, N.A.*,
No. 3:17-CV-00741-GNS-CHL, 2018 WL 6183285 (W.D. Ky.
Nov. 27, 2018) ................................................................................ 19

*Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*,
391 F.3d 1129 (10th Cir. 2004) ......................................................... 12

*Cummings v. FedEx Ground Package Sys., Inc.*,
404 F.3d 1258 (10th Cir. 2005) ............................................... 8, 14, 17

*Curtis v. JPMorgan Chase Bank, N.A.*,
No. 22 CIV. 10286 (LGS), 2024 WL 283474 (S.D.N.Y. Jan. 25,
2024) ............................................................................................ 15

*Dill v. JPMorgan Chase Bank, N.A.*,
No. 19 Civ. 10947 (KPF), 2020 WL 4345755 (S.D.N.Y. July 29,
2020) ............................................................................................ 15

*Fox v. I-10, Ltd.*,
    957 P.2d 1018 (Colo. 1998) .............................................................. 18

*Garrett v. Tandy Corp.*,
    295 F.3d 94 (1st Cir. 2002) ............................................................... 21

*Hampton v. Dillard Dep't Stores, Inc.*,
    247 F.3d 1091 (10th Cir. 2001) .................................................. 21, 23

*Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*,
    No. 2:02-CV-562, 2008 WL 2673925 (D. Utah July 7, 2008) .......... 23

*Jones v. Halliburton Co.*,
    625 F. Supp. 2d 339 (S.D. Tex. 2008) .................................. 25, 26, 27

*KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*,
    No. 20 Civ. 3910 (NRB), 2021 WL 1317163 (S.D.N.Y. Apr. 8,
    2021) ................................................................................................. 15

*Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*,
    53 F.4th 42 (2d Cir. 2022) ................................................................ 15

*Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*,
    252 F.3d 218 (2d Cir. 2001) ....................................................... 14, 17

*McWilliams v. Logicon, Inc.*,
    143 F.3d 573 (10th Cir. 1998) ......................................................... 13

*Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*,
    473 U.S. 614 (1985) ......................................................................... 27

*Morgan v. Sundance, Inc.*,
    596 U.S. 411 (2022) .................................................................... 13, 14

*Morris v. Dillard Dep't Stores, Inc.*,
    277 F.3d 743 (5th Cir. 2001) ..................................................... 21, 23

*Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*,
    460 U.S. 1 (1983) ............................................................................. 13

*Newflower Mkt., Inc. v. Cook*,
229 P.3d 1058 (Colo. App. 2010) ...................................................17

*Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*,
615 F.3d 1268 (10th Cir. 2010) .....................................................14

*P & P Indus., Inc. v. Sutter Corp.*,
179 F.3d 861 (10th Cir. 1999) ........................................................16

*Peters v. Amazon Servs. LLC*,
2 F. Supp. 3d 1165 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487
(9th Cir. 2016).................................................................................18

*Reeves v. Enter. Prods. Partners, LP*,
17 F.4th 1008 (10th Cir. 2021) .......................................................12

*Robertson v. Rep Processing, LLC*,
No. 19-CV-02910-PAB-NYW, 2020 WL 5702296 (D. Colo. Sept.
24, 2020) .........................................................................................18

*Sanchez v. Nitro-Lift Techs., L.L.C.*,
762 F.3d 1139 (10th Cir. 2014) ..........................................14, 16, 18

*St. Charles v. Sherman & Howard L.L.C.*,
No. 14-CV-03416-RM-CBS, 2015 WL 1887758 (D. Colo. Apr. 24,
2015) ..........................................................................................27, 28

*Sunmonu v. Chase Bank, N.A.*,
No. GLR-18-1695, 2019 WL 1258788 (D. Md. Mar. 19, 2019).........15

*Taylor v. JPMorgan Chase Bank, N.A.*,
No. CIV. 13-24-GFVT, 2014 WL 66513 (E.D. Ky. Jan. 8, 2014).....19

*United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. and
Serv. Workers Int'l Union & its Local 13-857 v. Phillips 66 Co.*,
839 F.3d 1198 (10th Cir. 2016) ......................................................16

*USI Props. E., Inc. v. Simpson*,
938 P.2d 168 (Colo. 1997)..................................................29, 30, 31

*Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
    489 U.S. 468 (1989) .............................................................................14

*Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*,
    31 F.4th 1300 (10th Cir. 2022) .........................................................22

*Williams v. Staples, Inc.*,
    372 F.3d 662 (4th Cir. 2004) ..............................................................21

*York v. JPMorgan Chase Bank, Nat'l Ass'n*,
    No. CV-18-04039-PHX-SPL, 2019 WL 3802535 (D. Ariz. Aug.
    13, 2019) .............................................................................................19

**Statutes**

9 U.S.C. § 16(a)(1)(C) .................................................................................1

28 U.S.C. § 1331 ...........................................................................................1

28 U.S.C. § 1367 ...........................................................................................1

42 U.S.C. § 1981 ..................................................................................*passim*

Colorado Anti-Discrimination Act, C.R.S. § 24-34-601 ..........................5

## STATEMENT OF RELATED CASES

None.

## JURISDICTIONAL STATEMENT

### A.      Basis for District Court's Subject-Matter Jurisdiction.

The district court had subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331 and 1367.

### B.      Basis for Court of Appeals' Jurisdiction.

This Court has jurisdiction over this appeal pursuant to 9 U.S.C. § 16(a)(1)(C).

### C.      Filing Dates Establishing Timeliness of Appeal.

The district court denied Defendants-Appellants' motion to compel arbitration on December 15, 2023 (the "Order"). Defendants-Appellants' Appendix ("App.") at 165-186. The notice of appeal was filed timely on January 11, 2024. App. at 187-189.

### D.      Finality of Judgment.

The Order denied the Motion to Compel Arbitration thereby rendering this Court's review appropriate.

## ISSUE PRESENTED FOR REVIEW

Whether the district court erred in denying Defendants-Appellants' motion to compel arbitration, including whether the district court failed to apply controlling legal standards after determining that the arbitration provision was broad and

whether the district court erred in determining that the allegations and claims in the complaint fell outside the scope of the arbitration provision.

## STATEMENT OF THE CASE

## I.    THE ACCOUNT AGREEMENT.

Plaintiff Jeanetta Vaughn opened her Account with JPMorgan Chase Bank, N.A. ("Chase")[1] on February 5, 2021, in person at the Quincy and Buckley Chase Branch in Aurora, Colorado. App. at 123-124. To open her Account, Plaintiff completed the "Click to Sign" account opening process and was issued a Personal Electronic Signature Card for her Account. App. at 123-125. As part of that process, Plaintiff was required to scroll through and acknowledge the terms of the Deposit Account Agreement ("DAA") governing her new account by personally clicking a conspicuous "Acknowledge" button. App. at 126-127. In doing so, Plaintiff acknowledged receipt of the DAA and agreed to "be bound by the terms and conditions contained therein as amended from time to time." App. at 127.

The DAA contained a binding arbitration provision:

You and we agree that upon the election of either of us, *any dispute relating in any way to your account or transactions* will be resolved by binding arbitration as discussed below, and not through litigation in any court (except for matters in small claims court).
· · ·
YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT

---

[1] JPMorgan Chase Bank, N.A. is incorrectly named as JPMorgan Chase & Co. d/b/a Chase Bank.

OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT
TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY,
OR OTHERWISE TO BE DECIDED BY A COURT OR
GOVERNMENT TRIBUNAL. . . .

App. at 118 (emphasis added; capitalization in original). This broad arbitration provision expressly covers claims or disputes arising from or related to the DAA, the Account, or transactions, noting further:

> Claims or disputes between you and us *about your deposit account, transactions involving your deposit account,* safe deposit box, *and any related service with us are subject to arbitration. Any claims or disputes arising from or relating to this agreement*, any prior account agreement between us, or the advertising, the application for, or the approval or establishment of your account are also included. Claims are subject to arbitration, regardless of what theory they are based on or whether they seek legal or equitable remedies. Arbitration applies to any and all such claims or disputes, whether they arose in the past, may currently exist or may arise in the future. . . .

*Id.* (emphasis added). The only limitation on the broad arbitration provision set forth in the DAA stated, "[t]he only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis." *Id.*

Not only was Plaintiff aware of this broad arbitration provision, but she also chose to be governed by it and did not opt-out:

> YOU HAVE THE RIGHT TO OPT OUT OF THIS AGREEMENT TO
> ARBITRATE, AS DISCUSSED BELOW, UNLESS YOU OPT OUT
> OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT
> TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY,

OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL. . . .

*Id*. (capitalization in original). There is no dispute regarding whether a valid and enforceable arbitration provision governs Plaintiff's contractual relationship with Chase. App. at 172 ("Plaintiff signed the [DAA] containing the arbitration provision in question—a point Plaintiff does not dispute").

## II.   THE INTERACTION AT THE CHASE BRANCH.

As admitted in her Complaint, on June 9, 2022, Plaintiff visited a Chase branch bank to withdraw money from her account and obtain counter checks. App. at 49. Upon entering the branch, Plaintiff alleged that she sat down to unlock her Chase card, which she locks when not in use for security reasons. App. at 50. In other words, Plaintiff judicially admitted that she was accessing her account and performing transactions to unlock her account in order to then perform additional transactions in her account. However, before approaching the teller line, Plaintiff asserts that Chase representative, Trina Pelech, approached Plaintiff and "loudly" asked if Plaintiff needed "help with something." App. at 51. In yet another judicial admission, Plaintiff claimed to have informed Ms. Pelech that she was there "doing business, trying to open up [her] account so [she] [could] get in line." *Id*.

Plaintiff alleged that Ms. Pelech ignored her explanation regarding the actions Plaintiff was taking in her account as well as the further transactions she intended to perform, stating that Plaintiff was "not welcome here," and threatened to call the

police. *Id*. Per the Complaint's allegations, the Chase representative believed that Plaintiff was recording the interaction at the branch on her phone. App. at 53. Plaintiff replied that "she would sit and wait for the police to come so that they could record the events at the Chase branch." App. at 51. The police were contacted, and Plaintiff alleged that she was said to be criminally trespassing. App. at 52. Plaintiff alleged that she "feared for her life as the officers approached her." App. at 53. After meeting with Plaintiff and Ms. Pelech separately, the officers declined to arrest Plaintiff or remove her from the property. App. at 55. Instead, Plaintiff left the Chase branch with her husband. App. at 60.

## III.   THE DISTRICT COURT PROCEEDINGS.

### A.   The Complaint.

Plaintiff filed her Complaint in the Arapahoe County District Court on August 11, 2023, pleading four causes of action against both Defendants: (1) violations of the Colorado Anti-Discrimination Act, C.R.S. § 24-34-601 *et seq.*; (2) violations of 42 U.S.C. § 1981; (3) negligent infliction of emotional distress; and (4) defamation *per se*. App. at 45-70. Defendants removed the action to the district court on September 5, 2023. App. at 12-18. In support of her claims, Plaintiff judicially admitted she:

- "drove to the Chase branch . . . to withdraw money from her Chase account, as she has routinely done in the past, and to obtain counter checks";

- "came to the Chase branch to conduct her bank transactions";

- "entered Chase Bank for personal banking purposes" and "doing business";

- needed "to log into" the app "[b]efore she could proceed with any transactions";

- did not understand Ms. Pelech's reaction as she was "just doing business" at the Chase branch;

- was "denied the right to enjoy all benefits, privileges, terms, and conditions of her contractual relationship as a Chase member";

- was "denied the full and equal enjoyment of [Chase's] banking service"; and

- could not "complete her personal banking business."

App. at 23, 24, 25, 28, 36, 37, 38.

## B. The Motion to Compel Arbitration.

On October 11, 2023, shortly after removing the case to federal court, Defendants filed the Motion to Compel Arbitration and Stay Proceedings, asserting: (i) Plaintiff agreed to the DAA when opening her account; (ii) the DAA contains a

binding arbitration provision; and (iii) Plaintiff's claims rely on her Agreement with Chase, such that the claims fall within the arbitration clause. App. at 71-93.

Plaintiff responded that the Agreement did not compel arbitration of the claims asserted in the Complaint because none of the claims arise out of the DAA. App. at 130-149. In the alternative, Plaintiff asserted that Defendants had not presented evidence sufficient to demonstrate an enforceable arbitration agreement. *Id*.

In reply, Defendants explained that the arbitration clause covers all of Plaintiff's claims. App. at 150-164. Specifically, Defendants asserted the arbitration clause is broad, with no carve-outs for specific causes of action and, in particular, because Plaintiff must have been engaged in a transaction to bring a Section 1981 claim, that claim is subject to arbitration. *Id*.

## C. The Order.

The district court "decline[d] to compel arbitration" in its Order Denying Defendants' Motion to Compel Arbitration on December 15, 2023. App. at 171. In the Order, the court identified the correct legal standards and presumptions in determining the enforceability of the arbitration provision but failed to apply them, or applied them incorrectly, to Plaintiff's allegations and claims.

The court acknowledged that "[f]ederal policy generally favors arbitration of disputes." App. at 169 (citations omitted). The court also recognized that "arbitration

agreements are generally treated like all other contracts." App. at 169-170. The court thereafter found that the Parties entered into a valid agreement to arbitrate "any dispute relating in any way to [Plaintiff's] account or transactions" including "[a]ny claims or disputes . . . about [Plaintiff's] deposit account, transactions involving [Plaintiff's] deposit account, safe deposit, and any related service with Chase." App. at 168, 178.

The court also determined that the valid arbitration provision was broad and, accordingly, acknowledged that "there arises a presumption of arbitrability[,] and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues with contract construction or the parties' rights and obligations under it." App. at 173 (citing *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)). Further, the district court recognized that because the arbitration clause was broad, that "finding creates a presumption in favor of arbitrability." *Id*. (citing *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018)). Accordingly, and pursuant to the express terms of the DAA, the district court was required to compel arbitration for:

- "any dispute" that "relate[d] in any way to [Plaintiff's] account or transactions" or

- "[a]ny claims or disputes arising from or relating to this agreement," including any "[c]laims or disputes between [Plaintiff] and [Chase

about [Plaintiff's] deposit account, transactions involving [Plaintiff's] deposit account, . . . and any related service with [Chase.]"

App. at 118-119.

Instead, and notwithstanding this lip service to the appropriate presumptions, the court found that the DAA "must have some limiting factor" and cited to a "but for" test. App. at 182-183. Specifically, the court stated that "the basis of the claims asserted in Plaintiff's Complaint—racial discrimination, defamation, and negligent infliction of emotional distress—have little or nothing to do with Plaintiff's Chase account, the terms of the [DAA], or the parties' relationship" and therefore, "stand independent from the [DAA]." App. at 177, 181. The district court thus found "the arbitration provision at issue contains limiting language that supports the Court's conclusion that Plaintiff's claims are outside the scope." App. at 182.

Citing a portion of the arbitration provision, the court concluded arbitration was limited only to "disputes about Plaintiff's deposit account" and "not claims of racial discrimination." *Id*. This finding ignored that the governing arbitration provision explicitly states that claims or disputes that concern "*any related service with [Chase],*" which would include customer service or the alleged lack thereof, or "relat[e] *in any way* to [Plaintiff's] account or transactions" are subject to arbitration. App. at 118-119 (emphasis added). The Order also failed to acknowledge that the arbitration provision in fact carves out an express exclusion—which is not racial

discrimination claims, but rather claims pursued in small claims court. App. at 118. Further, the district court ignored the myriad of allegations and judicial admissions that fell squarely within the broad scope of the arbitration provisions and, tellingly, that the legal claims themselves relied on the agreement.

Finally, the district court found that there was no evidence that Chase intended to require customers to arbitrate racial discrimination claims. App. at 183-185. To support this finding, the court went beyond the DAA and focused on extrinsic evidence even though it made no finding that the DAA was ambiguous and Plaintiff did not advance such an argument. App. at 183. The court did so under the guise of looking at Chase's intention as to the scope of the arbitration provision (even though it already had found the scope to be broad and for which there was a presumption of arbitrability). App. at 183-184. The court also found support for its "limiting" language by asserting that Chase was "on notice that customers can allege—and have alleged—racial discrimination against the bank." App. at 184. According to the district court and as set forth in the Order, because Chase knew that it could be sued for racial discrimination, it needed expressly and explicitly to list that as a basis for arbitration in order for such claims to fall within the broad scope that, ostensibly, carried with it a presumption of arbitration. App. at 185. The Court's Order gives no consideration to the possibility that Chase simply could have chosen not to compel arbitration in those other cases, which is within its prerogative.

Chase thereafter timely filed its notice of appeal.

## SUMMARY OF ARGUMENT

The district court erred in denying Chase's Motion to Compel. While it identified the correct legal standards, the court did not ultimately apply them, or applied different incorrect standards, and failed to afford Chase the appropriate presumptions after finding the arbitration provision at issue was broad. Instead, the court determined that the DAA "must have some limiting factor," but the law does not support that assertion. Instead, applying this Court's well-established precedent that requires a presumption of arbitrability, the district court should have found that the allegations in Plaintiff's Complaint were encompassed by the broad arbitration provision in the DAA and that Plaintiff's legal claims squarely fell within its broad scope. In finding otherwise, the court erred, and that error requires reversal.

The district court also erred in finding that the allegations asserted in the Complaint fell outside of the arbitration provision. Under the express provision, the district court was required to compel arbitration for "any dispute" that "relate[d] in any way to [Plaintiff's] account or transactions" and "[a]ny claims or disputes arising from or relating to this agreement," including any "[c]laims or disputes between [Plaintiff] and [Chase] about [Plaintiff's] deposit account, transactions involving [Plaintiff's] deposit account, . . . and any related service with [Chase.]" App. at 118-119. As evidenced by the numerous facts alleged—which are judicial admissions

and, therefore, have the effect of withdrawing a fact from contention—Plaintiff's Section 1981 and CADA claims both arise from and relate to the DAA and concern Plaintiff's account, as each claim concerns transactions involving the account and customer service interactions. The district court disregarded these judicial admissions and instead improperly read limitations into the arbitration provision that the plain language and the law do not support. This error requires reversal.

Finally, the district court's errors were compounded by the court's improper reliance on extrinsic evidence. The court acknowledged that the DAA's plain text governs this inquiry, but still misstated and misapplied this governing legal standard. Instead, with an unambiguous DAA and broad arbitration provision, the district court should not have considered extrinsic evidence to determine Chase's intent and, in any event, should have given it no probative weight. Accordingly, Chase requests the Court to reverse the Order, and to remand with directions to compel arbitration.

## ARGUMENT

### I. STANDARD OF REVIEW.

The district court's denial of a motion to compel arbitration is reviewed de novo. *Reeves v. Enter. Prods. Partners, LP*, 17 F.4th 1008, 1011 (10th Cir. 2021); *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191, 1196 (10th Cir. 2009). Where there is a valid agreement to arbitrate, federal policy generally favors arbitration of disputes. *Comanche Indian Tribe of Oklahoma v. 49,*

*L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004). Arbitration agreements are generally

treated like all other contracts, *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022),

and "any doubts concerning the scope of arbitrable issues should be resolved in favor

of arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Const. Corp.*, 460 U.S. 1,

24-25 (1983); *McWilliams v. Logicon, Inc.*, 143 F.3d 573, 576 (10th Cir. 1998) ("all

doubts must be resolved in favor of arbitrability").

## II.     THE DISTRICT COURT ERRED IN DENYING THE MOTION TO COMPEL.

### A.     The District Court Correctly Found the Arbitration Provision to Be Broad but Failed to Apply the Correct Standards and Presumptions Based on That Finding.

As it was undisputed that there was a valid agreement to arbitrate (App. at 172

("Plaintiff signed the [DAA] containing the arbitration provision in question—a

point Plaintiff does not dispute")), the district court stated that it needed only to

determine whether the allegations in the Complaint "relat[e] in any way to

[Plaintiff's] account or transactions." App. at 118.[2] To do so, the district court was

to apply a three-part test to determine whether an issue is within the scope of an

arbitration clause:

---

[2] In actuality, under the express terms of the DAA, the district court actually was required to compel arbitration for "any dispute" that "relate[d] in any way to [Plaintiff's] account or transactions" and "[a]ny claims or disputes arising from or relating to this agreement," including any "[c]laims or disputes between [Plaintiff] and [Chase] about [Plaintiff's] deposit account, transactions involving [Plaintiff's] deposit account, . . . and any related service with [Chase.]" App. at 118-119.

First, recognizing there is some range in the breadth of arbitration clauses, a court should classify the particular clause as either broad or narrow. Next, if reviewing a narrow clause, the court must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause. Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview. Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it.

*Cummings*, 404 F.3d at 1261 (emphasis omitted; quoting *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)).[3] In this case, the district court correctly classified the DAA as "generally broad," but failed to apply the correct presumption of arbitrability based on that finding.

As the district court ostensibly acknowledged, once a court finds an arbitration provision to be broad, there "arises a presumption of arbitrability" such that "arbitration of even a collateral matter [is to] be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." App. at 173 (citing *Cummings*, 404 F.3d at 1261); *Newmont U.S.A. Ltd. v. Ins. Co. of N. Am.*, 615 F.3d 1268, 1274 (10th Cir. 2010) (holding, "where the arbitration clause is broad, there arises a presumption of arbitrability[,] and arbitration of even

---

[3] Federal law "requires courts to enforce privately negotiated agreements to arbitrate, like other contracts, in accordance with their terms." *Volt Info. Sciences, Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989); *see also Morgan*, 596 U.S. at 418 (arbitration agreements are to be treated like all other contracts); *Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146 (10th Cir. 2014) (same).

a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it"); *accord Loc. Union 97, Int'l Bhd. of Elec. Workers, AFL-CIO v. NRG Energy, Inc.*, 53 F.4th 42, 48 (2d Cir. 2022) (same).

Several other courts faced with the same arbitration provision presented in this case have underscored the presumption of arbitrability. *See, e.g., Curtis v. JPMorgan Chase Bank, N.A.*, No. 22 CIV. 10286 (LGS), 2024 WL 283474, at *6 (S.D.N.Y. Jan. 25, 2024) ("[b]y their unambiguous terms, the arbitration clauses encompass Plaintiffs' claims" as the "claims unambiguously relate to '[Plaintiffs'] account[s] or transaction[s]'"); *KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, No. 20 Civ. 3910 (NRB), 2021 WL 1317163, at *1-2, 4-5 & n.9 (S.D.N.Y. Apr. 8, 2021) (noting "[w]ere the Court to address the scope of the arbitration provisions, . . . [t]he arbitration provision[] of the DAA . . . [is] plainly broad enough to encompass plaintiffs' claims"); *Dill v. JPMorgan Chase Bank, N.A.*, No. 19 Civ. 10947 (KPF), 2020 WL 4345755, at *6 (S.D.N.Y. July 29, 2020) (concluding that the "language of the DAA's arbitration provision is indisputably broad" and thus "create[s] a strong presumption of arbitrability"); *Sunmonu v. Chase Bank, N.A.*, No. GLR-18-1695, 2019 WL 1258788, at *2 (D. Md. Mar. 19, 2019) (the DAA "defines arbitrable claims broadly"). Faced with the DAA's broad arbitration provision here, the district court was to order arbitration unless the court determined with "positive

assurance" that the parties intended to exclude the matter from arbitration. *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. and Serv. Workers Int'l Union & its Local 13-857 v. Phillips 66 Co.*, 839 F.3d 1198, 1204 (10th Cir. 2016). No such positive assurances exist here.

More precisely, unless there was an "express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Sanchez*, 762 F.3d at 1147-48 (emphasis omitted); *P & P Indus., Inc. v. Sutter Corp.*, 179 F.3d 861, 871 (10th Cir. 1999) (this presumption in favor of arbitrability applies "with even greater force" when "a broad arbitration clause is at issue"). No such express provision or evidence of exclusion was present here.

Undeterred by the governing legal standard, and despite acknowledging it, the district court decided that the DAA "must have some limiting factor," looking to the "What claims or disputes are subject to arbitration?" header in the DAA. App. at 182-183. In doing so—and contrary to maxims of contractual interpretation—the district court selectively cited a portion of the arbitration provision in its quest to limit mandatory arbitration to "disputes about Plaintiff's deposit account" and "not claims of racial discrimination." App. at 182. But this finding ignored the *entirety of the* arbitration provision, which includes claims or disputes that concern "*any* related service with [Chase]" or "relat[e] *in any way* to [Plaintiff's] account or transactions."

App. at 118-119 (emphasis added). Under Colorado law, the district court was bound to construe the entire DAA, rather than isolate select phrases. *See Newflower Mkt., Inc. v. Cook*, 229 P.3d 1058, 1061 (Colo. App. 2010) ("Contracts must be construed as a whole, and specific phrases and terms should not be interpreted in isolation.").

Even if that were not so, a review of the arbitration provision against the Complaint's allegations establishes that Plaintiff's claims fall within the DAA's confines. Certainly, claims or disputes that concern Plaintiff's ability to: "conduct her bank transactions," "do[] business," "proceed with [] transactions," "complete her personal banking business," and "enjoy all benefits, privileges, terms, and conditions of her contractual relationship as a Chase member" (App. at 6, 10, 19, 20)—all of which Plaintiff admits she was performing or intended to perform upon entering the Chase branch—concern "any related service" or relate "in any way" to Plaintiff's account or transactions. *See Cavlovic*, 884 F.3d at 1059 (where parties entered into a broad arbitration agreement, there is a "presumption in favor of arbitrability"); *Cummings*, 404 F.3d at 1261 ("even a collateral matter will be ordered [to arbitration] if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it"); *see also Louis Dreyfus Negoce S.A.*, 252 F.3d at 225-27 (noting that phrase "[a]ny dispute arising from the making, performance or termination of this [agreement]," while containing limiting language, was "a broad arbitration clause").

Instead of applying the presumption of arbitrability to the arbitration provision, the district court did the opposite and wrote out the broad "any related services" language. But a reading of the provision establishes that the "any related services" language "clearly covers Plaintiff['s] claims because they directly relate to [her] use of [Chase's] services." *Peters v. Amazon Servs. LLC*, 2 F. Supp. 3d 1165, 1173 (W.D. Wash. 2013), *aff'd*, 669 F. App'x 487 (9th Cir. 2016) (finding that an arbitration clause that expressly covered "any related service" was broad and covered any claim related to the plaintiff's use of services). Thus, Plaintiff's claims are covered under the DAA.

Tellingly, where Chase intended for the arbitration provision to be limiting, it expressly stated so: "[t]he only exception to arbitration of Claims is that both you and we have the right to pursue a Claim in a small claims court instead of arbitration, if the Claim is in that court's jurisdiction and proceeds on an individual basis." App. at 118. The district court erred in reading in other "limiting" language into the DAA, as "there is no manifestation of an intent to limit the arbitration agreement," *Sanchez*, 762 F.3d at 1147, other than that which was already expressed (*i.e.*, the small claims court exclusion). The law does not permit the court to add limitations beyond those expressly set forth in the DAA. *Robertson v. Rep Processing, LLC*, No. 19-CV-02910-PAB-NYW, 2020 WL 5702296, at *4 (D. Colo. Sept. 24, 2020); *accord Fox v. I-10, Ltd.*, 957 P.2d 1018, 1022 (Colo. 1998) ("The court's duty is to interpret and

enforce contracts as written between the parties, not to rewrite or restructure them."); *Bator v. Mines Dev., Inc.*, 32 Colo. App. 320, 327 (1973) ("it is axiomatic that a court cannot remake a contract for the parties, adding terms that are not contained therein," but instead "it is the court's duty to ascertain the intent of the parties from the terms of the contract").

Rather than properly construe the broad arbitration provision's plain language, the district court tacitly found that the DAA needed to have included specific language regarding racial discrimination claims because Chase was "on notice that customers can allege—and have alleged—racial discrimination against the bank." App. at 184-185. To support this incorrect finding, the court cited four unpublished district court cases, all of which were dismissed with prejudice, and none of which provide that an arbitration provision must explicitly contemplate racial discrimination claims for such claims to fall within the provision's ambit. *Id.* (citing *Bowes-N. v. JPMorgan Chase Bank NA*, No. 3:21-CV-803 JD, 2022 WL 2237146, at *2 (N.D. Ind. June 21, 2022) (dismissed with prejudice for failure to state a claim); *York v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535, at *1 (D. Ariz. Aug. 13, 2019) (dismissed without prejudice for failure to state a claim and later dismissed with prejudice); *Coleman v. JPMorgan Chase Bank, N.A.*, No. 3:17-CV-00741-GNS-CHL, 2018 WL 6183285, at *1-2 (W.D. Ky. Nov. 27, 2018) (dismissed with prejudice); *Taylor v. JPMorgan Chase*

*Bank, N.A.*, No. CIV. 13-24-GFVT, 2014 WL 66513, at *1 (E.D. Ky. Jan. 8, 2014)).

But it is not the law that the precise claim and factual allegations must be included in an arbitration provision for it to govern, and none of the authority the district court cited provided as much. Rather, a broad arbitration provision like the one in the DAA is *presumed* to govern such a claim. *AT&T Techs., Inc. v. Commc'ns. Workers of Am.*, 475 U.S. 643, 650 (1986) (where the arbitration clause is broad, only an express provision excluding a specific dispute, or the "most forceful evidence of a purpose to exclude the claim from arbitration," will remove the dispute from consideration in arbitration). That the district court inserted irrelevant considerations like "notice," and ignored the express language in the DAA that the arbitration provision includes "any related service," highlights its outcome-determinative rationale. The Order must therefore be reversed.

**B.    The District Court Erred in Ignoring Plaintiff's Allegations and Finding That the Claims Fall Outside the Scope of the Arbitration Provision.**

Even if the district court had applied the correct standards and presumptions, the court's finding that Plaintiff's claims fall outside the scope of the DAA nevertheless requires reversal. While the district court acknowledged the broad scope of the arbitration provision, a review of the claims and facts as pleaded establishes that the district court erred in ignoring the allegations and finding that the claims fell outside the scope of the arbitration provision.

*First*, to state a Section 1981 claim, a plaintiff must allege: (1) she is a member of a protected class; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination interfered with a Section 1981 protected activity. *Hampton v. Dillard Dep't Stores, Inc*., 247 F.3d 1091, 1101-02 (10th Cir. 2001); *Garrett v. Tandy Corp*., 295 F.3d 94, 100-01 (1st Cir. 2002) (to state a claim for a Section 1981 violation, "a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship"); *see also Williams v. Staples, Inc*., 372 F.3d 662, 667-68 (4th Cir. 2004) (plaintiff attempted to contract by trying to purchase an item in a checkout line with an out-of-state check); *Morris v. Dillard Dep't Stores, Inc*., 277 F.3d 743, 753 (5th Cir. 2001) (granting summary judgment to store where there was no "tangible attempt to purchase, or to return, specified goods at the store, or to enter any other contractual agreement"). Section 1981 requires that the "protected activity" is one that goes "beyond the mere expectation of being treated without discrimination while shopping," "[there must be] the actual loss of a contract interest, not merely the possible loss of future contract opportunities." *Hampton*, 247 F.3d at 1104, 1118. For example, allegations of window shopping would not satisfy the pleading requirement for a Section 1981 claim, but attempting to transact with the store would. *Id*. at 1117-18.

In the Complaint here, Plaintiff alleged that she:

- "drove to the Chase branch . . . to withdraw money from her Chase account, as she has routinely done in the past, and to obtain counter checks";

- "came to the Chase branch to conduct her bank transactions";

- "entered Chase Bank for personal banking purposes" and "doing business";

- needed "to log into" the app "[b]efore she could proceed with any transactions";

- did not understand Ms. Pelech's reaction as she was "just doing business" at the Chase branch;

- was "denied the right to enjoy all benefits, privileges, terms, and conditions of her contractual relationship as a Chase member";

- was "denied the full and equal enjoyment of [Chase's] banking service"; and

- could not "complete her personal banking business."

App. at 23, 24, 25, 28, 36, 37, 38. Each of the above allegations concerns a "dispute relating *in any way* to [Plaintiff's] account or transactions" and "*related service*" with her Chase account, thereby triggering application of the broad arbitration provision. App. at 118-119 (emphasis added); *Wells Fargo Bank, N.A. v. Mesh Suture, Inc.*, 31 F.4th 1300, 1313 (10th Cir. 2022) ("statements in his pleadings were

binding judicial admissions" and such judicial admissions "have the effect of withdrawing a fact from contention").[4] Put simply, in order to prevail on her section 1981 claim, Plaintiff must plead and prove that the bank refused to conduct her *transactions* and provide her with services related to her business with Chase because of her race. Such a dispute falls squarely within the DAA's arbitration provision.

*Second*, as to the CADA claim, Plaintiff similarly relies on her status as a Chase accountholder. App. at 37. Specifically, Plaintiff alleges that she "entered Chase Bank for personal banking purposes," was "denied the full and equal enjoyment of [Chase's] banking service," and could not "complete her personal banking business." App. at 62-63. As Plaintiff relies on her contractual relationship with Chase via the DAA, her CADA claim arises from or relates to the DAA, is about the Account, and is about "transactions involving" the Account. *Island Peak Ranch, L.L.C. v. FIIK Inv. & Holdings, Inc.*, No. 2:02-CV-562, 2008 WL 2673925, at *12 (D. Utah July 7, 2008) (holding plaintiffs' judicial admission of being a party to agreement with arbitration clause was binding and that plaintiffs were judicially estopped from avoiding arbitration provision in deposit agreement where complaint

---

[4] Indeed, if Plaintiff's allegations did *not* relate to her transaction at Chase than she could not plead a viable Section 1981 claim, as she must have pleaded "the actual loss of a *contract interest*" lest her claim be subject do dismissal. *Hampton*, 247 F.3d at 1118 (emphasis added); *Morris*, 277 F.3d at 753. Plaintiff cannot have it both ways.

alleged plaintiffs' performance of the deposit agreement). That is, for Plaintiff to prevail on her CADA claim, she must allege and establish that she was denied enjoyment of Chase's services—including its customer service—on the basis of race. Similar to her section 1981 claim, the CADA claims fall squarely within the DAA's arbitration provision.

Seemingly ignoring Plaintiff's actual allegations, the district court found that "the basis of the claims asserted in Plaintiff's Complaint . . . have little or nothing to do with Plaintiff's Chase account, the terms of the [DAA], or the parties' relationship" and therefore Plaintiff's claims are not subject to arbitration. App. at 177. The district court relied on this Court's decision in *Cavlovic*, 884 F.3d at 1057, to support its decision that, notwithstanding the broad arbitration language in the DAA, Plaintiff's claims fall outside the scope of the arbitration provision. App. at 174-175. A review of *Cavlovic* and the allegations here illustrates why the court's reliance was misplaced.

In *Cavlovic*, Plaintiff alleged that J.C. Penney's advertisements were deceptive, including that J.C. Penney excessively marked up items and then dropped the price and disguised it as a discount. 884 F.3d at 1053. J.C. Penney sought to compel arbitration, under an arbitration agreement set forth in its J.C. Penney Rewards Program agreement, which contained a broad provision: "[J.C. Penney] and [Cavlovic] each agree that any dispute, claim, or controversy ('Claim') arising from

or relating to this Agreement or [Cavlovic's] [J.C. Penney] Rewards Membership will be resolved by binding arbitration conducted [in Collin County, Texas]." *Id*. at 1055. Although this Court found the arbitration language of "arising from or relating to" to be broad, thus creating a presumption of arbitrability, the motion to compel arbitration was denied because "the mere existence of the Rewards Program agreement is not itself sufficient to conclude that Cavlovic's allegations of deceptive advertising arise from or relate to that contract." *Id.* at 1060. While the contract in *Cavlovic* and the DAA here include "arising from or relating to this agreement" language, the arbitration provision here *further* includes broad language concerning Plaintiff's "dispute[s] relating *in any way* to your account or transactions"—which Plaintiff *admits* she was engaged in within the Complaint. The district court yet again ignored this controlling contractual language in favor of its erroneously restrictive construction.

The district court also relied on *Jones v. Halliburton Co.*, 625 F. Supp. 2d 339 (S.D. Tex. 2008), to support its erroneous finding of a restrictive construction. App. at 175-176. In *Jones*, Plaintiff entered into an employment agreement that included an arbitration provision stating: "[y]ou understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against parent or affiliate

of Employer, must be submitted to binding arbitration instead of to the court system." 625 F. Supp. 2d at 342-43. After being sexually assaulted by Halliburton employees while in Iraq, Plaintiff brought various claims against her employer and co-workers including for negligence, sexual harassment and hostile work environment under Title VII, retaliation, false imprisonment, breach of contract, fraud in the inducement, assault and battery and intentional infliction of emotional distress. *Id*. at 344. The court held Plaintiff's claims were unrelated to her employment, and, therefore, outside the scope of the arbitration clause. *Id*. at 351-52.

Here, unlike in *Jones*, it cannot be said that Plaintiff's claims are unrelated to or outside the DAA. Plaintiff *admits* that she visited the Chase branch as a customer to "conduct her bank transactions" and that she was there "just doing business." App. at 54. The arbitration provision expressly covers disputes "relating *in any way to* [*her*] *account or transactions*." App. at 118 (emphasis added). Moreover, unlike in *Cavlovic*, in which this Court found that "it [was] simply fortuitous that the parties happened to have a contractual relationship," 884 F.3d at 1060, it is undisputed here that the actions Plaintiff entered the Chase branch to undertake required her *to be an account holder* and, therefore, subject to the arbitration provisions of the DAA. App. at 129. Accordingly, the express language of the arbitration provision includes the

claims at issue in the Complaint, and the district court's reliance on *Cavlovic* and *Jones* was misplaced.

Even if this Court were to find that Plaintiff's claims were not directly related to the DAA, the law provides that "[w]hen a contract contains a broad arbitration clause, matters that touch the underlying contract should be arbitrated." *Brown v. Coleman Co., Inc.*, 220 F.3d 1180, 1184 (10th Cir. 2000) (citing *Mitsubishi Motors v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 624 n.14 (1985)); *accord Burlington N. & Santa Fe Ry. Co. v. Public Serv. Co. of Okla.*, 636 F.3d 562, 570 (10th Cir. 2010) ("[i]f the allegations underlying the claims touch matters covered by the parties' [arbitration agreement], then those claims must be arbitrated, whatever the legal labels attached to them"). There can be no question that Plaintiff's claims here "touch" the DAA and its arbitration provision, as Plaintiff has alleged that she would not have visited the Chase branch if she was not a customer and there to "transact," *i.e.*, withdraw money and get counter checks. Relying on this Court's decision in *Brown*, the district court in *St. Charles v. Sherman & Howard L.L.C.*, No. 14-CV-03416-RM-CBS, 2015 WL 1887758, at *3 (D. Colo. Apr. 24, 2015), recognized that where an agreement contains a broad arbitration clause, "[i]t is not necessary that Plaintiff allege a specific [] provision for the dispute to fall within the ambit of the arbitration provision" as the broad nature of the clause establishes that "[t]he parties did not clearly manifest an intent to narrowly limit arbitration to specific []

provisions." *Id*. at *4. The same is true here. Accordingly, the Order should be reversed and arbitration compelled, as the claims here necessarily relate to, or "touch," Plaintiff's Chase account and the DAA, and fall squarely within the arbitration provision in the DAA.

**C.    The District Court's Error is Compounded by its Focus on Extrinsic Evidence.**

As set forth above, the arbitration provision encompasses "*any* dispute relating *in any way* to your account or transactions." App. at 79 (emphasis added). The DAA further provides that "[c]laims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related services with us are subject to arbitration." *Id*. (emphasis omitted). "[A]lso included" within the arbitration provision are "[a]ny claims or disputes from or relating to this agreement, any prior account agreements between us, or the advertising, the application for, or the approval or establishment of your account." *Id*. The district court correctly determined that this clause is "broad" (App. at 173), but erroneously found that Plaintiff's claims "fall outside the scope" of this broad provision. App. at 174-183.  *See supra* Point II.B.

As part of its analysis, the district court ruled that there is no "evidence of the purported scope of Chase's arbitration provision," *i.e.*, whether "Chase intended to require customers to arbitrate racial discrimination claims." App. at 183-185. To support this finding, the court focused on "three declarations from senior Chase

employees [filed] with the[] Motion to Compel," which did "not provide any evidence that Chase intended to sweep racial discrimination claims under the arbitration provision." App. at 183. The district court found "the absence of this evidence compelling," and stated that "[w]ithout any evidence that Chase intended to include Plaintiff's claims within the purview of the arbitration provision, the plain text of the [DAA] governs." *Id*.

While it is indeed the law is that the DAA's plain text governs this inquiry, the district court both misstated and misapplied the governing legal standard—and muddied the analysis as a consequence. Under Colorado law, "written contracts that are complete and free from ambiguity *will be found to express the intention of the parties* and will be enforced according to their plain language." *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997) (en banc) (emphasis added). In other words, an unambiguous contract expresses the parties' intent *without reference to* extrinsic evidence—not the other way around, as the district court posited, ostensibly to explain away its improper evaluation of extrinsic evidence. Courts are only to consider extrinsic evidence "where there is an ambiguity in the terms of the contract." *Id.*

"Absent such ambiguity," Colorado courts "will *not* look beyond the four corners of the agreement in order to determine the meaning intended by the parties." *Id.* (emphasis added). As it is undisputed that the DAA is unambiguous and the

arbitration provision broad, the district court erred in considering extrinsic evidence to determine Chase's intent and to "find[] the absence of [such] evidence compelling." App. at 183. Thus, despite claiming to consider solely the plain language of the DAA as proof of Chase's intent (App. at 183-185), the district court erroneously hinged its determination of the arbitration provision's scope on *Chase's declarations* rather than the DAA itself—which the district court found to be broad and for which there is a presumption of arbitrability. *See supra* Point II.A.-B.

Further, although the district court made passing reference to Colorado maxims of contractual interpretation (*see* App. at 175 n.4), the court ignored that "[t]he intent of the parties to a contract is to be determined primarily *from the language of the instrument itself.*" *USI Props. E., Inc.*, 938 P.2d at 173 (emphasis added). The district court correctly found that the arbitration provision is broad, which under this Court's precedent creates a presumption in favor of arbitration, *see supra* Point II.A.-B., and at which point the district court was bound to apply Colorado law. Under Colorado law, Chase needed not provide additional "evidence" that it intended to include racial discrimination claims within the ambit of the DAA's arbitration provision; rather, because the DAA is unambiguous, the plain text of the agreement governs—and that plain text is decidedly broad. Indeed, as addressed above, this dispute relates "*in any way*" to Plaintiff's "account or transactions," as Plaintiff admitted she entered the Chase branch to withdraw money from her account

and obtain counter checks, and that when the Chase representative approached her, she was accessing her account to unlock it and perform additional transactions. Curiously, despite quoting this broad language, the district court failed to apply it, instead finding "Plaintiff's claims do not arise from or relate to the [DAA]." App. at 185. *See also supra* Point II.B.

Because Colorado law looks to the plain and ordinary meaning of contractual terms—and, under Colorado law, an unambiguous contract expresses the parties' intent on its face—the district court was bound to enforce the DAA's plain language rather than opine as to Chase's intent based on employee declarations (which is extrinsic evidence). *See USI Props. E., Inc.*, 938 P.2d at 173. Had the district court done that—and having already determined the arbitration provision was both clear on its face and broad in its scope—the district court should have found that the arbitration provision governs the allegations and claims here. Because the district court strayed from Colorado law by looking to extrinsic evidence rather than the contract's plain language, the order must be reversed.

## CONCLUSION AND RELIEF SOUGHT

Chase requests the Court to reverse the Order, and to remand with directions to compel arbitration as to all of Plaintiff's claims.

## STATEMENT REGARDING ORAL ARGUMENT

Chase requests oral argument, with 15 minutes allotted per side. The issues presented on appeal are sufficiently complex that oral argument would be of material benefit to the Court.

Respectfully submitted,

By: /s/ *Elliot H. Scherker*

Naomi Beer
GREENBERG TRAURIG, LLP
1144 15th Street, Suite 3300
Denver, Colorado 80202
Telephone: 303.572.6500
beern@gtlaw.com

Katherine M. Clemente
GREENBERG TRAURIG, LLP
One Vanderbilt Avenue
New York, New York 10017
Telephone: 212.801.9200
clementek@gtlaw.com

Elliot H. Scherker
Brigid F. Cech Samole
GREENBERG TRAURIG, P.A.
333 Southeast Second Avenue
Suite 4400
Miami, Florida 33131
Telephone: 305.579.0500
scherkere@gtlaw.com
cechsamoleb@gtlaw.com
miamiappellateservice@gtlaw.com

*Attorneys for Defendants-Appellants,*
*JPMorgan Chase Bank, N.A. and Trina Pelech*

## CERTIFICATE OF COMPLIANCE

1.      This brief complies with the word limit of Fed. R. App. P. 32(a)(7) because, excluding the parts of the brief exempted by Fed. R. App. P. 32(f), this document contains 7,408 words.

2.      This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Office Word 2016 in 14-point Times New Roman font.

By:  /s/ *Elliot H. Scherker*
Elliot H. Scherker

**CERTIFICATE OF SERVICE**

Counsel for Defendants-Appellants hereby certifies that on March 6, 2024, I electronically filed Defendants-Appellants' Principal Brief with the Clerk of the Court for the United States Court of Appeals for the Tenth Circuit by using the Appellate CM/ECF system. The following participants in the case are registered CM/ECF users and service will be accomplished by the appellate CM/ECF system:

Felipe Bohnet-Gomez
2701 Lawrence St., Suite 100
Denver, Colorado 80205
Fbg@rmlawyers.com

*Counsel for Plaintiff-Appellee*

By:  /s/ *Elliot H. Scherker*
Elliot H. Scherker

**10TH CIR. R. 28.2(A) ATTACHMENT**
(Order Denying Defendants' Motion to Compel Arbitration)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Charlotte N. Sweeney

Civil Action No. 1:23-cv-02266-CNS-NRN

JEANETTA VAUGHN,

     Plaintiff,

v.

JP MORGAN CHASE & CO. D/B/A CHASE BANK; A CORPORATION;
TRINA PELECH, AN INDIVIDUAL,

     Defendants.

---

## ORDER DENYING DEFENDANTS' MOTION TO COMPEL ARBITRATION

---

     Before the Court are Defendants JPMorgan Chase Bank, N.A. ("Chase") and Trina Pelech's Motion to Stay the Proceedings Pending Disposition of Defendants' Motion to Compel Arbitration (ECF No. 18) and Motion to Compel Arbitration and Stay Proceedings (ECF No. 19). Plaintiff filed responses to both motions (ECF No. 23 (Motion to Stay), ECF No. 28 (Motion to Compel Arbitration)), and Defendants filed reply briefs (ECF No. 32 (Motion to Compel Arbitration), ECF No. 33 (Motion to Stay)). The Court has reviewed the briefs and the relevant authority. For the reasons set forth in this Order, the Court denies the Motion to Compel Arbitration and denies as moot the Motion to Stay.

## I.  BACKGROUND[1]

This is a racial-discrimination case. On June 9, 2022, Plaintiff Jeanetta Vaughn, a Chase customer, walked into a Chase branch in Aurora, Colorado, around noon to withdraw money from her account and obtain counter checks (ECF No. 4, ¶¶ 21–23). Upon entering the bank, Ms. Vaughn sat down in a chair in the lobby reserved for customers and began to unlock her Chase card from her phone's Chase Bank Mobile Application (*id.*, ¶¶ 24, 29).[2] Ninety seconds after Ms. Vaughn sat down, Defendant Trina Pelech, the Chase Branch Manager and Vice President, approached Ms. Vaughn and asked whether she could help Ms. Vaughn (*id.*, ¶¶ 30–32, 50). Because it is relevant to Plaintiff's allegations, the Court notes that Ms. Vaughn is Black and Ms. Pelech is White (*id.*, ¶¶ 15, 30).

In response to Ms. Pelech's question, Ms. Vaughn explained that she was unlocking her card on her phone (*id.*, ¶ 32). Purportedly unsatisfied with this response, Ms. Pelech told Ms. Vaughn that she was not welcome in the bank and threatened to call the police (*id.*, ¶¶ 33–36). The interaction took place over the span of a minute and was captured by the bank's video cameras (*id.*, ¶¶ 43–44). But the incident did not end there. Ms. Pelech left the lobby and called 911 (*id.*, ¶¶ 46–47). She told the 911 operator that

---

[1] The background facts are taken from the allegations in Plaintiff's Complaint (ECF No. 4) and the materials submitted in connection with the parties' briefing on the Motion to Compel Arbitration (ECF No. 19, No. 28, and No. 32).

[2] Ms. Vaughn explains that "Chase offers a personal banking service that allows customers to lock and unlock their debit card" as an additional safety feature to prevent unwanted purchases (*id.*, ¶ 25). Ms. Vaughn habitually locks her Chase card between uses in the event her card is lost or stolen (*id.*, ¶ 26). Once inside the Chase app, there is four-step process to unlock the card (*id.*, ¶ 27).

Ms. Vaughn was being rude and aggressive and criminally trespassing on bank property (*id.*, ¶¶ 51–53).

There is a dispute over whether Plaintiff was not unlocking her account but actually videoing in the Branch against Chase policy (ECF No. 19 at 4). According to the Complaint, "Chase falsely told the Colorado Civil Rights Division during the agency's investigation of Ms. Vaughn's charge that Ms. Vaughn pulled out her phone camera and began recording the interaction after being ordered to leave the branch" (ECF No. 4, ¶ 54). Also according to the Complaint, Chase falsely told the Colorado Civil Rights Division that, "Ms. Pelech cautioned Ms. Vaughn that if Ms. Vaughn did not stop recording, she would have to leave, or Ms. Pelech would be forced to call the police" (*id.*, ¶ 56). Ms. Vaughn alleges that she never recorded Ms. Pelech nor did she imply she would record her until *after* Ms. Pelech threatened to call the police (*id.*, ¶ 55). And, Ms. Vaughn alleges that Ms. Pelech admitted in her 911 call that she ordered Ms. Vaughn to leave the branch only because she thought Ms. Vaughn was being rude (*id.*, ¶ 57). There apparently is no dispute that Ms. Vaughn was not recording at the time Ms. Pelech called 911 (*id.*, ¶ 58).

Two Aurora police officers arrived at the Chase branch just six minutes after Ms. Pelech called 911 (*id.*, ¶ 59). The officers told Ms. Vaughn that they were responding to a report of trespassing (*id.*, ¶ 60). Ms. Vaughn explained her side of the story, told the officers that she was a Chase customer, and answered the officers' questions (*id.*, ¶¶ 61–67). Ms. Vaughn then told the officers that her husband was on the way to the bank, and that she would wait for him to arrive (*id.*, ¶ 67). One of the officers then spoke with Ms. Pelech separately to record her statement (*id.*, ¶ 68).

After some additional discussions separately with Ms. Vaughn and Ms. Pelech, the officers declined to arrest Ms. Vaughn or remove her from the property (*id.*, ¶ 78). She eventually left the bank with her husband (*id.*, ¶¶ 101–21).

In response to Ms. Pelech's actions, Ms. Vaughn filed suit in Arapahoe County District Court, seeking relief on four separate counts: (1) violation of the Colorado Anti-Discrimination Act against Chase; (2) discrimination on the basis of race and/or ethnicity in violation of 42 U.S.C. § 1981 against both Defendants; (3) negligent infliction of emotional distress against both Defendants, and (4) defamation per se against both Defendants (*id.*, ¶¶ 132–76). Defendants removed Ms. Vaughn's case to this Court on September 5, 2023.

About a year and a half before the incident described above, on February 5, 2021, Ms. Vaughn opened her Chase account (ECF No. 19 at 8). As part of enrollment, Chase required Ms. Vaughn to sign the Deposit Account Agreement (*id.* at 1). The Deposit Account Agreement contained the following arbitration provision:

> You and we agree that upon election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below. And not through litigation in any court (except for matters in small claims court).
>
> * * *
>
> What claims or disputes are subject to arbitration?
>
> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related services with us are subject to arbitration. Any claims or disputes from or relating to this agreement, any prior account agreements between us, or the advertising, the application for, or the approval or establishment of your account are also included . . . .

(*id.* at 1–2, 8–10; ECF No. 28 at 4). It also contained the following "opt out" provision:

> YOU HAVE A RIGHT TO OPT OUT OF THIS AGREEMENT TO ARBITRATE, AS DISCUSSED BELOW. UNLESS YOU OPT OUT OF ARBITRATION, YOU AND WE ARE WAIVING THE RIGHT TO HAVE OUR DISPUTE HEARD BEFORE A JUDGE OR JURY, OR OTHERWISE TO BE DECIDED BY A COURT OR GOVERNMENT TRIBUNAL . . .

(ECF No. 19 at 3 (emphasis in original)).

The parties do not dispute that Ms. Vaughn signed the Deposit Account Agreement to open her Chase account (ECF No. 28 at 4). Nor do they dispute that she did not opt out of the arbitration provision (ECF No. 19-1 at 2). But they do dispute whether Ms. Vaughn's claims fall within the scope of the arbitration clause (ECF No. 28 at 4). This issue is the crux of the Motion to Compel. As explained below, Plaintiff's claims in this action are beyond the reach of the arbitration provision.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "evidencing a transaction involving commerce . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract . . . ." 9 U.S.C. § 2. The FAA expressly permits a party to petition a federal district court to compel arbitration, just as Defendants have done here. 9 U.S.C. § 4.

Federal policy generally favors arbitration of disputes, *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004), but because "arbitration is a matter of contract[,] a party cannot be required to submit to arbitration any dispute which [that party] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and quotations omitted). Indeed, arbitration agreements are

generally treated like all other contracts. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (explaining that the FAA's "policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules" (citation and quotations omitted)). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

In the instant case, there appears to be no dispute that Colorado law applies (ECF No. 19 at 12; ECF No. 28 at 5, 8). Under Colorado law, [t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Pierce v. St. Vrain Valley School District RE–1J*, 981 P.2d 600, 603 (Colo. 1999) (citations and quotations omitted). In short, the parties must have "agreed upon all essential terms," *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo. 1986), and there must be a "meeting of the minds." *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022).

The party attempting to compel arbitration bears the burden of demonstrating that a valid arbitration agreement exists. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). When the parties dispute the validity of an agreement to arbitrate, "a court may grant a motion to compel arbitration if there are no genuine issues of material fact regarding the parties' agreement." *Id.* (citation and quotations omitted).

Whether to enforce an arbitration agreement requires a court to employ a two-step process. The first step requires a court to determine whether there is an agreement that

provides the moving party the right to compel arbitration. *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). If the movant satisfies the first step, the second step requires a court to determine  whether the allegations in the complaint are within the scope of the arbitration provision. *Id.* District courts are required to give the party opposing the motion to compel arbitration the benefit of all reasonable doubts and inferences. *Hancock*, 701 F.3d at 1261.

## III.  ANALYSIS

Defendants argue that (1) Ms. Vaughn entered into a valid agreement to arbitrate, (2) the Deposit Account Agreement contains a broad arbitration clause that creates a presumption of arbitrability, and (3) each of her claims arise from or relate to the Deposit Account Agreement (ECF No. 19 at 5–13). Ms. Vaughn counters by arguing that (1) Defendants have failed to present evidence that no genuine dispute of facts exists, (2) the Chase arbitration provision does not compel arbitration of her claims, and (3) none of her claims arise out of the Deposit Account Agreement (ECF No. 28 at 13).

Having considered Defendants' Motion to Compel Arbitration, related briefing, and the relevant legal authority, the Court declines to compel arbitration.

**A.    The Parties entered into a valid agreement to arbitrate claims related to Plaintiff's deposit account.[3]**

The Court must first decide whether there is an agreement to arbitrate between Chase and Plaintiff. *Cavlovic*, 884 F.3d at 1057. The Court finds that there is. On February 5, 2021, Plaintiff signed the Deposit Account Agreement containing the arbitration provision in question—a point Plaintiff does not dispute (ECF No. 19 at 2, ECF No. 28 at 4 ("Ms. Vaughn signed the DAA to open her Chase account.")).

Having answered the first question in the affirmative, the Court moves on to the second question of the two-part inquiry—whether Plaintiff's claims fall within the scope of the arbitration provision.

**B.    The scope of the Deposit Account Agreement's arbitration provision is not limitless.**

The Court now must determine whether the allegations in the Complaint fall within the scope of the arbitration provision. *Cavlovic*, 884 F.3d at 1057. To make this determination, courts "classify the particular [arbitration] clause as either broad or narrow." *Chelsea Fam. Pharmacy, PLLC v. Medco Health Sols., Inc.*, 567 F.3d 1191,

---

[3] As a threshold matter, a district court generally must determine whether it has the power to rule on the issue of arbitrability, or whether an arbitrator should decide arbitrability. *See Belnap v. Iasis Healthcare*, 844 F.3d 1272, 1280 (10th Cir. 2017) ("[T]he Supreme Court has held that when parties agree that an arbitrator should decide arbitrability, they delegate to an arbitrator all threshold questions concerning arbitrability—including 'whether their agreement covers a particular controversy.'" (quoting *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 68–79 (2010))). Because neither party contends that this threshold question has been delegated to an arbitrator, the Court proceeds with analyzing whether there is a valid arbitration agreement in this case. *See AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator.").

1196 (10th Cir. 2009) (quoting *Cummings v. FedEx Ground Package Sys., Inc.*, 404 F.3d 1258, 1261 (10th Cir. 2005)); *see also Cavlovic*, 884 F.3d at 1057.

> 1.  *The Deposit Account Agreement's arbitration provision is generally broad.*

Where the arbitration clause is narrow, a court "must determine whether the dispute is over an issue that is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Burlington N. & Santa Fe Ry. Co. v. Pub. Serv. Co. of Oklahoma*, 636 F.3d 562, 569 (10th Cir. 2010) (quoting *Cummings,* 404 F.3d at 1261). Collateral matters generally are outside the scope of a narrow arbitration clause. *Id.* But where the arbitration clause is broad, "there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Cummings*, 404 F.3d at 1261 (internal quotation and citation omitted).

Here, the Court finds that the Deposit Account Agreement's arbitration clause is of the "broad" variety. In *Cavlovic*, the Tenth Circuit held that "arising from or relating to" is "broad language." 884 F.3d at 1059. Compare that language with the identical language in the Deposit Account Agreement: "[a]ny claims or disputes arising from or related to this agreement . . . are also [subject to arbitration]" (ECF No. 19 at 3). This finding creates a presumption in favor of arbitrability. *Cavlovic*, 884 F.3d at 1059.

>    *2. Although the Deposit Account Agreement's arbitration provision contains broad language, Plaintiff's claims nonetheless fall outside the scope of the agreement.*

Determining that a provision is broad does not end the inquiry. Under Colorado law, the "factual allegations which form the basis of the claim asserted, rather than the legal cause of action pled, should guide the district court in making the determination as to whether a particular dispute falls within the reach of the ADR clause." *City & Cnty. of Denver v. Dist. Ct. In & For City & Cnty. of Denver*, 939 P.2d 1353, 1364 (Colo. 1997); *see also Cavlovic*, 884 F.3d at 1059 (finding under similar Texas law that, once a court deems an arbitration clause "broad," the court's inquiry continues by applying the facts of the case to the plain meaning of the agreement).

Here, Defendants argue that Plaintiff's claims "fall squarely" within the scope of the arbitration provision because her "claims are expressly tied to the DAA" (ECF No. 19 at 2). Defendants also argue that each of Plaintiff's claims "arise or relate to the DAA," stating that none of the claims alleged would exist absent the contractual relationship between the parties established by the Deposit Account Agreement (ECF No. 19 at 10–11). The Court disagrees with both arguments.

The Court finds *Cavlovic v. J.C. Penney Corp.* instructive. In *Cavlovic*, despite the agreement's broad language—which covered all claims "arising from or relating to" J.C. Penney's Credit Card Rewards Program—the Tenth Circuit found that the plaintiff's claims fell outside the scope of the arbitration provision. 884 F.3d at 1059. The plaintiff's dispute centered on J.C. Penney's alleged scheme of marking up products by a significant margin and then immediately offering those marked-up products at steep discounts to

boost sales. *Id.* at 1053. Although the plaintiff was a J.C. Penney cardholder who signed the Rewards Program agreement, the Tenth Circuit held that the plaintiff's claim fell outside the scope of the agreement.[4] *Id.* at 1059. The Tenth Circuit explained that "Cavlovic and J.C. Penney agreed to arbitrate disputes that 'aris[e] from or relat[e] to' the Rewards Program," but the plaintiff's allegations concerned facts outside the scope of the Rewards Program—namely that J.C. Penney falsely inflated the prices of its products only to "subsequently mark the prices back down to leave an impression of a deep discount." *Id.* at 1060 (alterations in original). The court went on to reason that, "with respect to the alleged wrong, it [was] simply fortuitous that the parties happened to have a contractual relationship." *Id.* (quoting *Coors Brewing Co. v. Molson Breweries*, 51 F.3d 1511, 1516 (10th Cir. 1995)).

The Court also finds *Jones v. Halliburton Co.* instructive. 625 F. Supp. 2d 339 (S.D.

---

[4] The court applied Texas law because the 2014 Rewards Program agreement had a Texas choice-of-law provision. *Cavlovic*, 884 F.3d at 1059. Texas law requires a court to "look at the parties' intent." *Id.* at 1059–60 (citing and quoting *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994) ("When construing a contract, the court's primary concern is to give effect to the written expression of the parties' intent."); *BBVA Compass Inv. Sols., Inc. v. Brooks*, 456 S.W.3d 711, 718 (Tex. App. 2015) (holding that "[w]hether a claim is subject to arbitration turns on its substance"); and *IHS Acquisition No. 171, Inc. v. Beatty–Ortiz*, 387 S.W.3d 799, 806 (Tex. App. 2012) (a determination of whether a party can compel arbitration "requires courts to honor parties' expectations").

Despite applying Texas law, Colorado courts apply the same basic principles of contract interpretation. *See N.A. Rugby Union LLC v. U.S. Rugby Football Union*, 442 P.3d 859, 863 (Colo. 2019) ("In construing an arbitration agreement, we look to the plain and ordinary meaning of the terms of that agreement, and we construe the agreement to effectuate the parties' intent and the purposes of the agreement."); *City & Cnty. of Denver*, 939 P.2d at 1364 ("The factual allegations which form the basis of the claim asserted, rather than the legal cause of action pled, should guide the district court in making the determination as to whether a particular dispute falls within the reach of the ADR clause."). The Court thus finds *Cavlovic* persuasive.

Tex. 2008), *aff'd*, 583 F.3d 228 (5th Cir. 2009). The plaintiff in *Jones* brought claims against her employer and several co-employees after she allegedly was drugged and brutally raped by several Halliburton employees in her employer-provided barracks room while deployed to Baghdad, Iraq. *Id*. at 352. She brought claims of negligence; negligent undertaking; negligent hiring, supervision, and retention; sexual harassment and hostile work environment under Title VII; retaliation; false imprisonment; breach of contract; various fraud allegations; assault; battery; and intentional infliction of emotional distress. *Id*. at 344. She further contended that the corporate defendants were vicariously liable for the torts committed directly by its employees. *Id*. Halliburton moved to compel arbitration, arguing that the plaintiff agreed to arbitrate "any and all claims that [she] might have against Employer related to [her] employment, including [her] termination, and any and all personal injury claim arising in the workplace." *Id.* at 351.

The district court held that several of the plaintiff's claims fell beyond the outer limits of the broad arbitration provision. Specifically, the Court found that the plaintiff's claims for (a) vicariously liability for assault and battery; (b) intentional infliction of emotional distress arising out of that assault; (c) negligent hiring, retention, and supervision of the employees involved in the assault; and (d) false imprisonment were not related to her employment and thus beyond the scope of the arbitration provision. *Id.* The court commented that the "fact that the rape was allegedly perpetrated by Halliburton/KBR employees does not mean that the assault necessarily had anything at all to do with [the plaintiff's] employment." *Id.* at 352. It went on to say that the "arbitration clause did not require [the plaintiff] to arbitrate any and all claims against her employer,

without more. Instead, she [was] required to arbitrate any and all claims *related to her employment.*" *Id.* (emphasis in original). And finally, the court held that "[e]ven a broad provision such as this one has limits, and the Court can say with positive assurance that the alleged sexual assault in this case, and the abovementioned claims arising out of that assault, do not even touch on [the plaintiff's] employment." *Id.*

Here, just as in *Cavlovic* and *Jones*, the basis of the claims asserted in Plaintiff's Complaint—racial discrimination, defamation, and negligent infliction of emotional distress—have little or nothing to do with Plaintiff's Chase account, the terms of the Deposit Account Agreement, or the parties' relationship. *See also Coors,* 51 F.3d at 1516 (holding that antitrust claims that are not factually related to parties' contractual relationship were not subject to arbitration agreement). Stated differently, the "but for" causation that is present in many of the cases cited by Defendants is absent here. *See, e.g.*, *St. Charles v. Sherman & Howard L.L.C.*, No. 14-CV-03416-RM-CBS, 2015 WL 1887758, at *4 (D. Colo. Apr. 24, 2015) ("But for the Operating Agreement which establishes the Plaintiff's employment relationship to Defendants, Sherman & Howard and Wear could not have engaged in acts which allegedly violated Plaintiff's rights. The Operating Agreement sets forth Plaintiff's employment obligations and certain permitted actions by Sherman & Howard. Thus, it is not simply fortuitous that the parties had a contractual relationship. Rather, the Operating Agreement established the 'connection' through which actions allegedly in violation of Plaintiff's rights could occur." (citations to the record omitted)). In other words, Plaintiff's claims do not arise from, or relate to, the Deposit Account Agreement.

Defendants have not directed the Court to a single case involving an arbitration provision that required a similarly situated plaintiff to arbitrate claims of racial discrimination. Defendants correctly point out that at least two of their cited cases have required a plaintiff to arbitrate alleged violations of § 1981 (ECF No. 32 at 3–4). But the disputes in those cases arose in an employer–employee context and plainly centered on the workplace. *See Lambert v. Tesla, Inc.*, 923 F.3d 1246, 1248 (9th Cir. 2019) (alleging claims of harassment by fellow employees, failure to promote because of the plaintiff's race, and employment discrimination); *Cirino v. L. Gordon Holdings, Inc.*, No. 13-CV-4800, 2014 WL 2880291, at *1 (E.D. Pa. June 25, 2014) (alleging employer unlawfully subjected the plaintiff to discriminatory treatment based on his race, and that he was ultimately terminated by employer due to his race).

Defendants also direct the Court to eight decisions where "courts have regularly enforced the very same Chase DAA arbitration provision at issue in this case" (ECF No. 19 at 7, 7 n.7, 9). True, each respective court determined that the Deposit Account Agreement's arbitration provision was valid. But each case is distinguishable from the facts of this case because each dispute plainly related to Chase's banking services, and therefore, are "[c]laims or disputes between [the plaintiff] and [Chase] about [the plaintiff's] deposit account, transactions involving [the plaintiff's] deposit account, safe deposit box, and any related services" (ECF No. 19-3 at 25). *See, e.g.*,

- *KPA Promotion & Awards, Inc. v. JPMorgan Chase & Co.*, 2021 WL 1317163 (S.D.N.Y. Apr. 8, 2021) (granting Chase's motion to compel arbitration under the FAA after the plaintiffs alleged claims relating to their applications and denials for federally guaranteed COVID-19 Paycheck Protection Program loans from Chase);

- *Scott v. JPMorgan Chase & Co.*, 2014 WL 338753 (S.D.N.Y. Jan. 30, 2014), *aff'd*, 603 F. App'x 33 (2d Cir. 2015) (compelling arbitration of dispute alleging Chase unilaterally enrolled the plaintiff and other customers into Chase's Overdraft Protection Program, all of which "principally stem[med] from two withdrawals in her Checking Account");

- *Sha-Poppin Gourmet Popcorn LLC v. JPMorgan Chase Bank, N.A.*, 553 F. Supp. 3d 452 (N.D. Ill. 2021) (granting motion to compel arbitration under the Chase Deposit Account Agreement after plaintiffs, who were Chase customers, alleged that Chase did not process their Paycheck Protection Program loans in a timely manner);

- *Sunmonu v. Chase Bank, N.A.*, 2019 WL 1258788 (D. Md. Mar. 19, 2019) (customer sued Chase after the bank canceled "longtime" Chase customer's bank account alleging breach of contract, the court granted Chase's motion to compel arbitration);

- *Johnson v. JPMorgan Chase Bank, N.A.*, 2018 WL 4726042 (C.D. Cal. Sept. 18, 2018) (ordering arbitration of the plaintiffs' dispute concerning Chase's overdraft and insufficient-funds fees);

- *Sanchez v. J.P. Morgan Chase Bank, N.A.*, 2014 WL 4063046 (S.D. Fla. Aug. 15, 2014) (compelling arbitration after customers sued Chase for breach of contract and related claims after Chase temporarily lowered the transactional limits on the plaintiffs' debit cards in response to a third-party data breach);

- *Novak v. JP Morgan Chase Bank, NA*, 2008 WL 907380 (E.D. Mich. Mar. 31, 2008) (ordering arbitration of the plaintiffs' dispute involving allegedly unauthorized withdrawals, including forged checks, from their jointly held Chase account);

- *Dill v. JPMorgan Chase Bank, N.A.*, 2020 WL 4345755 (S.D.N.Y. July 29, 2020) (compelling arbitration over dispute concerning the escheatment of abandoned property payable on uncashed cashier's checks).

In each of the above cases, the dispute directly centered on the receptive plaintiff's relationship with Chase that pertained to account services. Here, that Plaintiff had an account with Chase is irrelevant. Plaintiff was not allowed to even attempt a bank transaction before she was approached and accused of nefarious conduct. Indeed, Defendants acted like Plaintiff was *not* a customer and had *no* relationship with Chase.

In addition to the cases cited above, Defendants assert that *Bhakta v. Choice Hotels Int'l, Inc.*, No. 16-1431-EFM, 2017 WL 86192, at *1 (D. Kan. Jan. 10, 2017), is on point (ECF No. 32 at 6). In that case, the plaintiffs owned and operated a Comfort Suites hotel. *Bhakta*, 2017 WL 86192, at *1. They sued Choice Hotels International, Inc., the franchisor of the Comfort Suites brand, for negligence stemming from the defendant's alleged failure to notify the plaintiffs about the termination of a contractor as a qualified vendor. *Id.* Plaintiffs sought damages for their lost payment to the contractor and for their financial losses resulting from the delayed hotel opening. *Id.*

Choice Hotels moved to compel arbitration to enforce the arbitration provision in the parties' franchise agreement, which required arbitration of "any controversy or *claim arising out of or relating to this Agreement* . . . ." *Id.* (emphasis in original). The plaintiffs did not dispute the validity of the arbitration provision, but they argued that their legal claim—a "wholly independent tort claim"—fell outside the scope of that provision. *Id.* at *2. In rejecting that argument, the court reasoned that the plaintiffs' claim directly related to the "rules and regulations" regarding Choice Hotels' standards and requirements for constructing, equipping, and furnishing the hotel. *Id.* at *3. And the franchise agreement

specifically required the plaintiffs to construct and furnish the hotel "according to the Agreement and the Rules and Regulations." *Id.*

The Court is not persuaded that *Bhakta* directs the result Defendants seeks. There, unlike here, the franchisees' claim was based on a contractual relationship with Choice Hotels. Absent the franchise agreement, the plaintiffs would have no claims against Choice Hotels. The facts alleged in Plaintiff's Complaint, however, stand independent from the Deposit Account Agreement. This case would be different if, for example, Plaintiff alleged that Defendants charged her a higher interest rate on a loan because of her race. In that hypothetical, Plaintiff's claim may relate to the Deposit Account Agreement. *See, e.g.*, *Cavlovic*, 884 F.3d at 1060 (hypothesizing that a dispute about whether the plaintiff was receiving an adequate number of Rewards Points may well arise from or relate to the Rewards Program).

"The factual allegations which form the basis of the claim asserted . . . [determine] whether a particular dispute falls within the reach of the ADR clause." *City & Cnty. of Denver*, 939 P.2d at 1364. Plaintiff's claims would exist outside any contractual relationship with Chase and therefore do not necessarily arise from or relate to the Deposit Account Agreement. *See Coors*, 51 F.3d at 1516 ("[I]f two small business owners execute a sales contract including a general arbitration clause, and one assaults the other, we would think it elementary that the sales contract did not require the victim to arbitrate the tort claim because the tort claim is not related to the sales contract. In other words, with respect to the alleged wrong, it is simply fortuitous that the parties happened to have a contractual relationship."); *Novak v. JP Morgan Chase Bank, NA*, 2008 WL

907380 (E.D. Mich. Mar. 31, 2008) (compelling arbitration in part because several of the plaintiffs' claims could not "be maintained without reference to their account and their relationship with Defendant"); *Mikes v. Strauss*, 889 F. Supp. 746, 754 (S.D.N.Y. 1995) (holding that the plaintiff's False Claims Act *qui tam* claims were outside the scope of the arbitration provision and reasoning that, "[e]ven if plaintiff had never been employed by defendants, assuming other conditions were met, she would still be able to bring a suit against them for presenting false claims to the government").

Moreover, the arbitration provision at issue contains limiting language that supports the Court's conclusion that Plaintiff's claims are outside the scope. For example, under the Deposit Account Agreement's header labelled "What claims or disputes are subject to arbitration?," the Deposit Account Agreement provides that "[c]laims or disputes between you and us about your *deposit account, transactions involving your deposit account, safe deposit box, and any related service* with us are subject to arbitration" (ECF No. 19-3 at 25). This limiting language indicates that disputes about Plaintiff's deposit account are subject to arbitration, not claims of racial discrimination—which are claims wholly independent from her account. *See Sanchez v. Nitro-Lift Techs., L.L.C.*, 762 F.3d 1139, 1146–47 (10th Cir. 2014) (explaining that "limiting language" can include "restricting arbitration to any specific disputes or to the agreement itself"). Indeed, Plaintiff was approached by Ms. Pelech simply because she entered the branch and was sitting in the lobby.

Finally, despite the arbitration provision's generally broad language, the Court finds that the Deposit Account Agreement's arbitration provision must have some limiting

factor. *See Jones*, 625 F. Supp. 2d at 352 ("Even a broad provision such as this one has limits . . . ."), *aff'd*, 583 F.3d 228 (5th Cir. 2009) (agreeing that "even broad clauses have their limits" and are "not unbounded" (quotations omitted)).

### 3. There is no any evidence that Chase intended to require customers to arbitrate racial discrimination claims.

Defendants filed three declarations from senior Chase employees with their Motion to Compel Arbitration (ECF No. 19-1, No. 19-2, No. 19-6). The declarations detail how Chase customers, including Plaintiff, "Click to Sign" the Deposit Account Agreement when opening a new account (ECF No. 19-6 at 2–4). The declarations go on to detail how Chase updates the Deposit Account Agreement from time to time (ECF No. 19-2 at 2), and how Plaintiff and other customers supposedly "ratify" the newest version of the Deposit Account Agreement (ECF No. 19 at 4, ECF No. 19-6 at 6). And the declarations explain how customers are permitted to "opt out" of arbitration (ECF No. 19-1 at 2).

Missing from these declarations, however, is any evidence of the purported scope of Chase's arbitration provision. Without any evidence that Chase intended to include Plaintiff's claims within the purview of the arbitration provision, the plain text of the Deposit Account Agreement governs. Defendants do not provide any evidence that Chase intended to sweep racial discrimination claims under the arbitration provision. The Court finds the absence of this evidence compelling. Had Chase intended to include such claims within the purview of its arbitration provision, it could have done so. It chose not to. *See Winn v. Ensign U-Healthcare Resort of Leawood*, No. 19-CV-2715-EFM-JPO, 2020 WL 2849902, at *1–2 (D. Kan. June 2, 2020) (compelling arbitration where agreements

"clearly include a clause requiring claims related to race discrimination . . . to be submitted to arbitration").

Nor can Chase claim that it wasn't on notice that customers can allege—and have alleged—racial discrimination against the bank. *See, e.g.*, *Bowes-N. v. JPMorgan Chase Bank NA*, No. 3:21-CV-803 JD, 2022 WL 2237146, at *2 (N.D. Ind. June 21, 2022) (alleging that Chase racially discriminated against the plaintiff by requiring him to produce photo identification prior to accessing his account); *York v. JPMorgan Chase Bank, Nat'l Ass'n*, No. CV-18-04039-PHX-SPL, 2019 WL 3802535, at *1 (D. Ariz. Aug. 13, 2019) (alleging racial discrimination in violation of § 1981); *Coleman v. JPMorgan Chase Bank, N.A.*, No. 317CV00741-GNS-CHL, 2018 WL 6183285, at *1–2 (W.D. Ky. Nov. 27, 2018) (alleging that Chase discriminated against the plaintiff in violation of § 1981 after the bank froze her account to "investigate" payments by one of the plaintiff's parishioners); *Taylor v. JPMorgan Chase Bank, N.A.*, No. CIV. 13-24-GFVT, 2014 WL 66513, at *1 (E.D. Ky. Jan. 8, 2014) (alleging racial discrimination where Chase placed a hold on a check the plaintiff attempted to cash).[5]

Additionally, accepting Plaintiff's allegations in her Complaint as true for the instant purpose, Chase was aware at the time the parties entered the Deposit Account Agreement that Chase had faced previous complaints of racial discrimination (ECF No. 4, ¶¶ 122–31). For example, Plaintiff alleges five instances where Chase allegedly engaged in a pattern of discriminatory treatment against its Black customers (ECF No. 4

---

[5] The Court cites these cases for the sole purpose to show that Chase was on notice that customers have alleged racial discrimination claims against Chase.

at ¶¶ 123–26, 131). Beyond these five instances, Plaintiff further alleges that Chase has "admitted to receiving four complaints of racial discrimination since September 2021 at *the very same branch* where the discrimination against Ms. Vaughn took place," and that three of these complaints were made by Black customers (*id.*, ¶¶ 127–28 (emphasis in original)). It is clear that Chase cannot claim that it had no notice that racial discrimination cases brought by its customers may arise.

A court cannot compel arbitration over a dispute that the parties did not agree to arbitrate. *See Howsam*, 537 U.S. at 83. Despite the broad language of the arbitration provision at issue, Plaintiff's claims do not arise from or relate to the Deposit Account Agreement. Accordingly, Defendants' Motion to Compel Arbitration is denied.[6] *See Price v. Random House, Inc.*, No. CIVA07CV01347-RPM- MJW, 2009 WL 3415821, at *5 (D. Colo. Oct. 16, 2009) ("[A] court may compel arbitration of a particular dispute under § 4 of the FAA only when satisfied that the making of the agreement to arbitrate is not at issue." (quoting *Spahr v. Secco*, 330 F.3d 1266, 1269–70 (10th Cir.2003) (10th Cir. 2003) (quotation marks omitted))).[7]

### C. Defendant's Motion to Stay is denied as moot.

Defendants' Motion to Stay the Proceedings Pending Disposition of Defendants' Motion to Compel Arbitration (ECF No. 18) is moot and thus denied. Per Defendants'

---

[6] Because the Court has ruled that Plaintiff's claims are outside the scope of the Deposit Account Agreement's arbitration provision, the Court need not decide whether the provision is unconscionable as applied to claims of racial discrimination.

[7] Because the Court finds that Plaintiff's claims fall outside the scope of the Deposit Account Agreement's arbitration provision, it necessarily follows that Defendant Pelech is not entitled to enforce the arbitration provision in this case (*see* ECF No. 19 at 14).

request, their responsive-pleading deadline is 30 days from entry of this Order.

## IV. CONCLUSION

Defendants' Motion to Compel Arbitration and Stay Proceedings (ECF No. 19) is DENIED. As a result, Defendants' Motion to Stay the Proceedings Pending Disposition of Defendants' Motion to Compel Arbitration (ECF No. 18) is DENIED as moot.

DATED this 15th day of December 2023.

BY THE COURT:

_____

Charlotte N. Sweeney
United States District Judge