# IN THE UNITED STATES COURT OF APPEALS
# FOR THE TENTH CIRCUIT

| | |
|---|---|
| Jeanetta Vaughn,<br><br>     Plaintiff-Appellee,<br><br>v.<br><br>JP Morgan Chase & Co., et al.,<br><br>     Defendants-Appellants. | On Appeal from the United<br>   States District Court<br>for the District of Colorado<br><br>The Honorable Charlotte N.<br>   Sweeney, District Judge<br><br>District of Colorado No.<br>23-CV-02266-CNS-NRN |

## PLAINTIFF-APPELLEE'S RESPONSE BRIEF

RATHOD | MOHAMEDBHAI LLC

Iris Halpern
Crist Whitney
2701 Lawrence Street, Suite 100
Denver, Colorado 80205
303-578-4400
ih@rmlawyers.com
cw@rmlawyers.com

Oral argument is requested.

# TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ........................................................................ iv

STATEMENT OF RELATED CASES ..................................................... 1

STATEMENT OF ISSUES PRESENTED FOR REVIEW ..................... 1

STATEMENT OF THE CASE ................................................................... 1

   I.     Ms. Vaughn's Interaction with Ms. Pelech and Police at Chase Bank ........ 1

   II.    The Deposit Account Agreement ................................................. 3

   III.   Chase Removes Ms. Vaughn's Complaint to Federal Court ...................... 4

   IV.   Appellants' Motion to Stay and Compel Arbitration is Denied ................... 5

SUMMARY OF ARGUMENT ................................................................. 8

STANDARD OF REVIEW ...................................................................... 9

ARGUMENT ........................................................................................... 12

   I. Chase's Arbitration Provision Does Not Compel Arbitration of Ms. Vaughn's Claims ................................................................................. 12

      A.    Ms. Vaughn's Claims Go Beyond the Plain Language of the DAA's Arbitration Provision ......................................................................... 12

B.    Ms. Vaughn Never Agreed to Arbitrate the Types of Claims Alleged in Her Complaint ................................................................................14

C.    No Presumption of Arbitrability Applies to Ms. Vaughn's Claims, Because the Claims Do Not Present an Issue of Contract Construction .........17

II.    Ms. Vaughn's Claims Do Not Arise Out of the Deposit Account Agreement .........................................................................................20

A.    Ms. Vaughn Did Not have Sufficient Warning Before Committing Her Claims to Arbitration .........................................................................21

B.    Chase's Counsel Acknowledges that these Types of Claims Do Not Arise Out of the Arbitration Provision ...........................................................23

C.    Ms. Vaughn Could Still Bring the Claims With or Without the DAA ...25

III.    Chase Has Failed to Provide Evidence that No Genuine Dispute of Facts Exists ....................................................................................27

CONCLUSION .......................................................................................32

STATEMENT REGARDING ORAL ARGUMENT ...............................................32

CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS ...............34

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Albright v. McDermond* 14 P.3d 318 (Colo.2000) ...................................................17

*Aliments Krispy Kernels, Inc., v. Nichols Farms*, 851 F.3d 283 (3rd Cir. 2017).....29

*Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C. Cir.

2008) ......................................................................................................................28

*Allstate Ins. Co. v. Starke*, 797 P.2d 14 (Colo. 1990)..............................................17

*Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793 (10th Cir. 1995) .........................9

*AT&T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643 (1986)................................15

*Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276 (10th Cir. 2007).........................26

*Brown v. Dorsey & Whitney, LLP*, 267 F. Supp. 2d 61 (D.D.C. 2003)....................28

*Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051 (10th Cir. 2018) .........11, 15, 16

*Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862 (6th Cir.2001) ...........................25

*Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129 (10th Cir. 2004)

........................................................................................................................10

*Communication Workers of America v. Avaya*, 693 F.3d 1295 (10th Cir. 2012).....20

*First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938 (1995) ..............................10

*French v. Centura Health Corp.*, 509 P.3d 443 (Colo. 2022) ..................................11

*Fundamental Admin. Servs., LLC*, 504 F.App'x (10th Cir. 2012)............................28

iv

*Garrett v. Tandy Corp.*, 295 F.3d 94 (1st Cir. 2002) ..................................................27

*Gateway Coal Co. v. Mine Workers*, 414 U.S. 368 (1974) ......................................15

*Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091 (10th Cir. 2001) .................26

*Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248 (10th Cir. 2012) ...........................11

*Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470 (10th Cir. 2006) ....................10

*Hearn v. Comcast Cable Comm'ns, LLC*, 992 F.3d 1209 (11th Cir. 2021).............21

*Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79 (2002)........................... 10, 15

*I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882 (Colo. 1986)..............11

*IHS Markit, Ltd. v. Colliers Int'l WA, LLC*, 2021 WL 5104672 (D. Colo. Oct. 12, 2021) ........................................................................................................................13

*Int'l Underwriters v. Triple I: Int'l Inv. Inc.*, 533 F.3d 1342 (11th Cir. 2008).........20

*Janicek v. Obsideo*, 271 P.3d 1133 (Colo. App. 2011)..............................................13

*Morgan v. Sundance, Inc.*, 596 U.S. 411 (2022)......................................................10

*Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743 (5th Cir. 2001)........................26

*Morris v. Office Max, Inc.*, 89 F.3d 411 (7th Cir. 1996) .........................................26

*Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310 (Colo.1984) ...................13

*Pierce v. St. Vrain Valley School District RE–1J*, 981 P.2d 600 (Colo. 1999)... 10,13

*Pub. Serv. Co. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333 (Colo.2006) .......13

*Ragab v. Howard*, 841 F.3d (10th Cir. 2016)............................................................9

*Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775 (10th Cir. 1998) ..21

*Roberts v. Adams*, 47 P.3d 690 (Colo.App.2001)....................................................17

*University of Denver v. Doe*, WL 1979412 (Colo. May 6, 2024)............................13

*USI Props. E., Inc. v. Simpson*, 938 P.2d 168 (Colo. 1997).....................................29

*Vernon v. Qwest Communs. Int'l*, 857 F.Supp.2d 1135 (D. Colo. 2012).................28

*Winn v. Ensign U-Healthcare Resort of Leawood,* No. 19-CV-2715-EFM-JPO,

   2020 WL 2849902 (D. Kan. June 2, 2020) ........................................................14

**Statutes**

28 U.S.C. §§ 1331, 1367, 1441(a) 1446(b)...........................................................10

42 U.S.C. § 1981 ............................................................................... 9, 13, 31

9 U.S.C. § 2 ...................................................................................... 15, 25

C.R.S. § 24-34-601 et seq ..................................................................9, 13

**Rules**

Fed. R. Civ. P. 56(c) ........................................................................... 34, 35

There are no prior or related appeals.

## STATEMENT OF ISSUES PRESENTED FOR REVIEW

Whether the district court properly concluded that Plaintiff Jeanetta Vaughn's racial discrimination, negligent infliction of emotional distress, and defamation claims fell outside the scope of the arbitration provision contained in Defendant JP Morgan Chase Bank's Deposit Account Agreement.

## STATEMENT OF THE CASE

### I. Ms. Vaughn's Interaction with Ms. Pelech and Police at Chase Bank

This case arises from Appellants' ("Chase") unlawful and racially degrading treatment of Appellee Jeanetta Vaughn ("Ms. Vaughn") when she entered a Chase Bank branch in Aurora, Colorado on June 9, 2022. Defendants-Appellants' Appendix ("App.") at 23, ¶ 22. Ms. Vaughn, a Black woman, entered the bank that day and took a seat in the lobby. *Id*. at 24, ¶ 29. Branch Manager Trina Pelech, a White woman, immediately approached her and loudly asked Ms. Vaughn if she could help her with anything. *Id*. at 25, ¶ 32. Ms. Vaughn calmly responded that she needed no assistance and was seated because she needed to unlock her card. *Id*. Instead of accepting Ms. Vaughn's response, Ms. Pelech told Ms. Vaughn that she was "not welcome" at Chase and threatened to call the police. *Id*. at ¶ 33. Shocked, Ms. Vaughn replied that she would sit and wait for the police to come so that they

could record the events at the Chase branch. *Id*. at ¶ 37. Ms. Pelech then called the police and accused Ms. Vaughn of trespassing. *Id*. at 26, ¶ 52. On the 911 call, Ms. Pelech also admitted that the only reason she ordered Ms. Vaughn to leave the branch was because she was being "rude" and "aggressive," and for no other reason. *Id*. at ¶ 53.

Two Aurora police officers, Timothy Gramse and Donald Hickox entered the Chase branch at around 11:46 a.m. and told Ms. Vaughn that they were responding to a report of trespassing. *Id*. at 27, ¶ 59. Ms. Vaughn confirmed with the officers that Ms. Pelech told her that, "You're not welcomed here," and threatened to call the police on her. *Id*. at 28, ¶ 66. When Officer Gramse spoke with Ms. Pelech, she alleged that Ms. Vaughn was rude, and Ms. Pelech then mimicked how Black women supposedly speak, with her hand raised, her neck swinging, and her face fixed into a scowl. *Id*. at 29, ¶ 71-72. Ms. Pelech also confirmed to Officer Gramse that she told Ms. Vaughn that, "She is not welcome here." Officer Gramse explained to Ms. Pelech that he did not want to put his hands on Ms. Vaughn because she did not seem to be a danger. *Id*. at ¶ 78-79. Ms. Pelech agreed that Ms. Vaughn was not a danger, which was contrary to what she told the police on the 911 call where she described Ms. Vaughn as aggressive. *Id*. at ¶ 80-81.

When Officer Gramse explained to Ms. Pelech that he believed Ms. Vaughn felt singled out because she was African American, Ms. Pelech dramatically rolled

her eyes and stated, "That's always the excuse…" *Id*. at 32, ¶ 105-106. Ms. Pelech further stated, "If you're going to threaten to videotape us and I say you're not allowed to and you're going to keep pointing it at me, then you're going to have to go." *Id*. at 33, ¶ 109. However, during her call to 911, Ms. Pelech did not state that Ms. Vaughn had "threatened" to record her. Instead, she told the dispatcher that Ms. Vaughn had started to record her. *Id*. at ¶ 110. The officers then spoke with Ms. Vaughn and explained that this was a trespass call, but they were not looking to charge Ms. Vaughn with anything. *Id*. at 34, ¶ 117. Shortly following this encounter, Ms. Vaughn left the bank branch. *Id*. at ¶ 121.

## II.    The Deposit Account Agreement

Ms. Vaughn opened her deposit account with Chase on February 5, 2021, at the Chase Bank branch in Aurora, Colorado. Before opening her account with Chase Bank, Ms. Vaughn signed the Deposit Account Agreement ("DAA") which describes procedures and services for: opening accounts, using checking and savings accounts, a funds available policy, safeguarding financial information, managing and maintaining accounts, maintaining certificates of deposits, closing accounts, and other legal terms, none of which discuss or describe nondiscrimination, public accommodations, or other general tort claims. *Id*. at 95-121. The DAA includes an arbitration clause allowing disputes arising from the agreement and services

provided by Chase Bank while servicing accounts to proceed to arbitration as opposed to a trial by jury.

The DAA's arbitration provision states:

> You and we agree that upon election of either of us, any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below. And not through litigation in any court (except for matters in small claims court).

*Id*. at 118. The DAA further describes what claims or disputes are subject to arbitration:

> Claims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related services with us are subject to arbitration. Any claims or disputes from or relating to this agreement, any prior account agreements between us, or the advertising, the application for, or the approval or establishment of your account are also included…

*Id*. The DAA's language makes no mention of arbitrating claims outside of disputes over accounts, transactions with those accounts, safety deposit boxes, and similar services, including disputes relating to the DAA or prior agreements.

### III. Chase Removes Ms. Vaughn's Complaint to Federal Court

On August 11, 2023, Ms. Vaughn filed a Complaint and Jury Demand in the District Court of Arapahoe County. Ms. Vaughn has brought four claims for relief, three of the four of which she brings against both Defendants. First, Ms. Vaughn brings claims of race discrimination in public accommodation under C.R.S. § 24-34-601 et seq. the Colorado Anti-Discrimination Act ("CADA") against Chase Bank. *Id*. at 36-37, ¶¶ 132-146. Ms. Vaughn also brings race discrimination claims

under 42 U.S.C. § 1981, negligent infliction of emotional distress, and defamation claims against both Defendants. *Id*. at 38-39, ¶¶ 147-155, 39-42, ¶¶ 156-176. Ms. Vaughn's claims are not based on a violation of the DAA, or the services described or guaranteed therein.

On September 5, 2023, Chase, pursuant to 28 U.S.C. §§ 1331, 1367, 1441(a) 1446(b) removed the action to the United States District Court for the District of Colorado. *Id*. at 12-18.

## IV.   Appellants' Motion to Stay and Compel Arbitration is Denied

Shortly following this case's removal to federal court, Chase filed a Motion to Stay Proceedings and Compel Arbitration. *See Id*. at 71-93. In its Motion, Chase, among other things argued that good cause existed for the lower court to compel arbitration because Ms. Vaughn's claims were related to her account with Chase. Appellants further stated that without a contract in place there would be no such claims. *Id*. at 87-90. Finally, Chase argued that the DAA's provisions were broad enough to encapsulate all four of Ms. Vaughn's claims. *Id*. at 84-86.

During a Scheduling Conference held on November 14, 2024, Magistrate Judge N. Reid Neureiter questioned Defense Counsel about the scope of Chase's arbitration agreement:

> The Court: if somebody goes into a bank and a teller hauls off and hits them in the face, it's an assault. I can see somebody filing a lawsuit. Is that subject to the arbitration provision in your agreement?

Ms. Beer: Well, Your Honor, I think it depends on the facts of what is happening.

The Court: Okay. Take my facts. Somebody comes into a bank and pulls out their check book to try and deposit, the teller takes offense for some reason and smacks them in the face.

Ms. Beer: Well, I think a couple of things. Number one, I think that teller would be acting outside the scope and course of their employment, which probably has an impact there. You know, one of the issues on the motion (unintelligible) arbitration is whether or not the customer is engaged in the transaction, which brings it within the ambit of the arbitration clause. So it would depend on what the customer is doing at the moment. I can't imagine a situation where a teller or a branch manager would just, for no reason, haul off and punch a customer in the face, but if that did happen, I certainly think that would be outside the scope of their employment with Chase.

The Court: Well, similarly, in modern America one would hope that for no reason a branch manager wouldn't ask an African American person to leave and tell them that they're not welcome there…And I know you dispute that. I know you dispute that, but that's the allegation. Right?

*Suppl. App.* At 12-14.

In the Order Denying Defendants' Motion to Compel Arbitration (the "Order"), the district court rejected Chase's position that Ms. Vaughn's claims were related to her account with Chase. In regard to whether Ms. Vaughn's claims are related to her being a Chase customer, the district court held:

Here, that Plaintiff had an account with Chase is irrelevant. Plaintiff was not allowed to even attempt a bank transaction before she was approached and accused of nefarious conduct. Indeed, Defendants acted like Plaintiff was not a customer and had no relationship with Chase.

*App.* at 180. The district court further stated that the facts in Ms. Vaughn's Complaint and Jury Demand stand independent from the DAA, and that Ms. Vaughn's claims would "exist outside any contractual relationship with Chase and therefore do not necessarily arise from or relate to the Deposit Account Agreement." *Id.* at 181.

The district court acknowledged that the DAA's arbitration provision is broad but does contain "limiting language that supports the Court's conclusion that Plaintiff's claims are outside the scope." *Id.* at 182. As an example, the district court quoted the DAA's arbitration provision which provides that "[c]laims or disputes between you and us about your deposit account, transactions involving your deposit account, safe deposit box, and any related service with us are subject to arbitration." *Id.* This limiting language indicated to the district court that "disputes about Plaintiff's deposit account are subject to arbitration, not claims of racial discrimination—which are claims wholly independent from her account." *Id.*

Finally, the district court noted that there is no evidence that Chase intended to require customers to arbitrate racial discrimination claims.

> Without any evidence that Chase intended to include Plaintiff's claims within the purview of the arbitration provision, the plain text of the Deposit Account Agreement governs. Defendants do not provide any evidence that Chase intended to sweep racial discrimination claims under the arbitration provision. The Court finds the absence of this evidence compelling. Had Chase intended to include such claims within the purview of its arbitration provision, it could have done so. It chose not to.

*Id*. at 183. The district court not only stated that there is no evidence that Chase intended to require customers to arbitrate racial discrimination claims, but further noted that Chase cannot claim that it was not on notice that customers can allege—and have alleged—racial discrimination in the past against the bank. *Id*. at 184. The district court cited a number of cases where individuals have alleged racial discrimination against the bank. *Id*. The district court ultimately denied Chase's Motion and concluded that, "A court cannot compel arbitration over a dispute that the parties did not agree to arbitrate." *Id*. at 185.

## SUMMARY OF ARGUMENT

In this case, the district court correctly applied the controlling legal standards to hold that: (1) Ms. Vaughn's claims fall outside of the outer bounds of the arbitration provision in her existing DAA with Chase; and (2) that Chase presented no evidence that it ever intended for such claims to be subject to arbitration. *Id.* at 174-185. Both are true and thus the district court ruled correctly. Although a valid arbitration agreement may exist between two parties, the party seeking to enforce such an agreement must provide objective notice of the nature of the claims to be arbitrated. Defendant Chase failed to do that here. While the mandate to arbitrate is broad, an arbitration agreement is still governed by normal contract principles – a party cannot be required to submit to arbitration any dispute which he or she has not agreed to do so. *Id.* at 169-170. As the district court observed, nothing in Defendants'

own statements or submissions to the court during briefing indicates that Chase intended for race discrimination, defamation, or other similar claims to be subject to arbitration under the DAA. *Id.* at 183-185. To the contrary, at other times during this litigation, Chase has asserted that malevolent employee conduct falls well outside of the agreement. Given the plain language of the provision, and Chase's own uncertainty, and changing explanation, about what falls within the arbitration agreement's scope, an objectively reasonable account holder, like Ms. Vaughn, would have no warning that claims such as hers would be subject to arbitration. Thus, as the district court accurately concluded, Chase cannot force Ms. Vaughn to arbitrate her claims because where a dispute of material fact exists as to whether a particular claim is subject to arbitration, controlling precedence requires that a motion to compel arbitration be denied. *Id.* at 170-171.

## STANDARD OF REVIEW

The Appellate Court reviews a district court's denial of a motion to compel arbitration de novo and applies the same legal standard as the district court. *Ragab v. Howard*, 841 F.3d 1134 (10th Cir. 2016) (citing *Armijo v. Prudential Ins. Co. of Am.*, 72 F.3d 793, 796 (10th Cir. 1995)).

The Federal Arbitration Act ("FAA") provides that a written arbitration agreement "evidencing a transaction involving commerce . . . shall be valid,

irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract…" 9 U.S.C. § 2.

Federal policy generally favors arbitration of disputes, *Comanche Indian Tribe of Oklahoma v. 49, L.L.C.*, 391 F.3d 1129, 1131 (10th Cir. 2004), but because "arbitration is a matter of contract[,] a party cannot be required to submit to arbitration any dispute which [that party] has not agreed so to submit." *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83 (2002) (citation and quotations omitted). Indeed, arbitration agreements are generally treated like all other contracts. *Morgan v. Sundance, Inc.*, 596 U.S. 411, 418 (2022) (explaining that the FAA's "policy favoring arbitration does not authorize federal courts to invent special, arbitration-preferring procedural rules" (citation and quotations omitted)). "When deciding whether the parties agreed to arbitrate a certain matter . . . courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995) (citation omitted); *Hardin v. First Cash Fin. Servs., Inc.*, 465 F.3d 470, 475 (10th Cir. 2006).

Under Colorado law, [t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration." *Pierce v. St. Vrain Valley School District RE–1J*, 981 P.2d 600, 603 (Colo. 1999) (citations and quotations omitted). In short, the parties must have "agreed upon all essential terms," *I.M.A., Inc. v. Rocky Mountain Airways, Inc.*, 713 P.2d 882, 888 (Colo.

1986), and there must be a "meeting of the minds." *French v. Centura Health Corp.*, 509 P.3d 443, 449 (Colo. 2022).

The party attempting to compel arbitration bears the burden of demonstrating that a valid arbitration agreement exists. *Hancock v. Am. Tel. & Tel. Co.*, 701 F.3d 1248, 1261 (10th Cir. 2012). When the parties dispute the validity of an agreement to arbitrate, "a court may grant a motion to compel arbitration if there are no genuine issues of material fact regarding the parties' agreement." *Id.* (citation and quotations omitted).

Whether to enforce an arbitration agreement requires a court to employ a two-step process. The first step requires a court to determine whether there is an agreement that provides the moving party the right to compel arbitration. *Cavlovic v. J.C. Penney Corp., Inc.*, 884 F.3d 1051, 1057 (10th Cir. 2018). If the movant satisfies the first step, the second step requires a court to determine whether the allegations in the complaint are within the scope of the arbitration provision. *Id.* District courts are required to give the party opposing the motion to compel arbitration the benefit of all reasonable doubts and inferences. *Hancock*, 701 F.3d at 1261

# **ARGUMENT**

## I.     Chase's Arbitration Provision Does Not Compel Arbitration of Ms. Vaughn's Claims

The district court properly denied Chase's Motion to stay litigation and compel arbitration because the plain language of Chase's arbitration provision does not contemplate these types of claims to proceed to arbitration. Under Colorado law, a party cannot be required to submit to arbitration any dispute which the parties have not agreed to submit. Finally, Ms. Vaughn's claims are not an issue of contract formation, Ms. Vaughn's claims are based on discrimination and state torts. Therefore, the district court properly denied Chase's Motion.

### A.     Ms. Vaughn's Claims Go Beyond the Plain Language of the DAA's Arbitration Provision

The arbitration provision contained in Chase's DAA plainly states that, "…any dispute relating in any way to your account or transactions will be resolved by binding arbitration as discussed below. And not through litigation in any court (except for matters in small claims court)." App. at 118. It is clear based on the language that any dispute relating to the account, or any transactions would be resolved in arbitration. Because Ms. Vaughn's claims do not relate to her account or any transaction, they are beyond the scope of the DAA's arbitration provision.

Under Colorado law, [t]he formation of a contract requires a bargain in which there is a manifestation of mutual assent to the exchange and a consideration."

*Pierce*, 981 P.2d at 603 (Colo. 1999). Mutual assent to the terms of the contract refers to a "meeting of the minds." *IHS Markit, Ltd. v. Colliers Int'l WA, LLC*, 2021 WL 5104672, at *7 (D. Colo. Oct. 12, 2021). Without a meeting of the minds, there can be no contract. *University of Denver v. Doe*, WL 1979412 (Colo. May 6, 2024).

Under Colorado law, written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to the plain language. *Janicek v. Obsideo*, 271 P.3d 1133, 1138 (Colo. App. 2011). However, a contract is ambiguous when it is reasonably susceptible of more than one meaning. *Pub. Serv. Co. v. Meadow Island Ditch Co. No. 2*, 132 P.3d 333, 339 (Colo.2006). When an ambiguity is found to exist that cannot be resolved by reference to other contractual provisions, the trial court must consider extrinsic evidence in order to determine the parties' intent. *Pepcol Mfg. Co. v. Denver Union Corp.*, 687 P.2d 1310, 1314 (Colo. 1984).

In this case, there is much that is ambiguous about the arbitration provision. While it states that arbitration is binding for any dispute that relates to the account or transaction, this language indicates that the disputes referred to are financial in nature and arise from Ms. Vaughn's account or transaction. However, Ms. Vaughn brings two racial discrimination claims and two tort claims, which she could have asserted without being a Chase member or even signing the DAA. These claims go well beyond the plain language of the arbitration provision and the district court

correctly construed the DAA's plain language to find that Ms. Vaughn could not be compelled to arbitrate her discrimination and tort claims against Chase.

In addition, the district court evaluated three declarations filed by Chase with their Motion. The district court found the lack of evidence of Chase's intention to sweep racial discrimination claims under the arbitration provision compelling. *See* App. at 19. "Had Chase intended to include such claims within the purview of its arbitration provision, it could have done so. It chose not to." *Id. See also Winn v. Ensign U-Healthcare Resort of Leawood,* No. 19-CV-2715-EFM-JPO, 2020 WL 2849902, at *1–2 (D. Kan. June 2, 2020) (compelling arbitration where agreements "clearly include a clause requiring claims related to race discrimination . . . to be submitted to arbitration").

The district court could not find any intention to submit these claims to arbitration because no intention exists. Based on the plain language, only the claims that relate to Ms. Vaughn's accounts or transactions can be submitted to arbitration. Ms. Vaughn's claims do not relate to either.

## B. Ms. Vaughn Never Agreed to Arbitrate the Types of Claims Alleged in Her Complaint

Chase argues that the DAA's arbitration clause is broad enough to require Ms. Vaughn to submit all of her claims, regardless of the nature of those claims, to arbitration. *See* App. at 7-8; *See Defendants-Appellants' Opening Brief* at 11 (the "Brief"). However, arbitration is a matter of contract, and a party cannot be required

to submit to arbitration any dispute which [that party] has not agreed so to submit." *Howsam* v, 537 U.S. at 83. "This axiom recognizes the fact that arbitrators derive their authority to resolve disputes only because the parties have agreed in advance to submit such grievances to arbitration." *Gateway Coal Co. v. Mine Workers*, 414 U.S. 368, 374, (1974). Courts must first evaluate the threshold question of whether the parties consented to submit a particular dispute to arbitration. *AT&T Tech., Inc. v. Commc'ns Workers*, 475 U.S. 643, 649 (1986) ("[B]ecause arbitration is a creature of contract, a party cannot be forced to arbitrate any issue he has not agreed to submit to arbitration.") (internal quotations omitted). Likewise, Ms. Vaughn never agreed to arbitrate the types of claims alleged in her Complaint.

In this case, the district court found that the arbitration provision was broad because of the "arising from or relating to" language contained in the provision. *See* App. at 9; *see also Cavlovic*, 884 F.3d at 1059. However, the district court further found that the inquiry does not stop there. *See* App. at 10.

In *Cavlovic v. J.C. Penney Corp., Inc.*, Plaintiffs alleged J.C. Penney's scheme of marking up products caused them emotional distress and the scheme was ongoing. *Cavlovic* 884 F.3d at 1054. J.C. Penney, like here, removed the case to the United States District Court for the District of Kansas and a month later moved to stay the proceedings and compel arbitration. *Id*. In support of its position to move to compel arbitration, J.C. Penney produced the Rewards Program Agreement between

Cavlovic and J.C. Penney. *Id*. The Rewards Program Agreement had a similar arbitration provision to the one found in this case. The arbitration provision included, "any dispute or claim" and "arising from or relating to" language that is found in Chase's DAA. *Id*. at 1055.

The Court in *Cavlovic* analyzed whether the agreement provided J.C. Penney the right to compel arbitration and, if the parties had an agreement that provided J.C. Penney the right to compel arbitration, whether the facts at issue are within the scope of the arbitration agreement. *Id* at 1057. J.C. Penney, like Chase, argued that any allegation against J.C. Penney that even tangentially involves the Rewards Program Agreement must be subject to arbitration. The Court in *Cavlovic* found that the parties likely agreed to arbitrate a disagreement about whether Cavlovic was receiving adequate number of Rewards Points or giving the proper amount of store credit for her Rewards Points but did not support the conclusion that the parties also agreed to arbitrate disputes about allegations of fraudulent advertising. *Id*. at 1060.

Similarly, the district court in this case found, "this case would be different if, for example, Plaintiff alleged that Defendants charged her a higher interest rate on a loan because of her race." *See* App. at 181. The district court further adds, "In that hypothetical, Plaintiff's claim may relate to the Deposit Account Agreement." *Id*.

Like *Cavlovic*, where the agreement to arbitrate did not support the conclusion that the parties also agreed to arbitrate disputes about allegations of fraudulent

advertising, Ms. Vaughn in no way agreed to arbitrate disputes about racial discrimination, emotional distress, and defamation.

## C. No Presumption of Arbitrability Applies to Ms. Vaughn's Claims, Because the Claims Do Not Present an Issue of Contract Construction

Next, Appellants argue that where the arbitration clause is broad, there arises a presumption of arbitrability of even a collateral matter and arbitration will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it. *See* Brief at 22. Though the district court found the arbitration provision broad, Ms. Vaughn's claims are not an issue of contract construction and therefore arbitration was not ordered.

Contract construction involves the process of interpreting a contract's terms to ascertain the parties' true intentions. In reviewing a contract, a court's primary obligation is to effectuate the intent of the contracting parties according to the plain language and meaning of the contract. *Albright v. McDermond*, 14 P.3d 318, 322 (Colo. 2000). To determine the meaning of a contract, courts are guided by the general rules of contract construction and should seek to give effect to all provisions so that none will be rendered meaningless. *Roberts v. Adams*, 47 P.3d 690, 694 (Colo. App. 2001); *Allstate Ins. Co. v. Starke*, 797 P.2d 14, 18 (Colo. 1990) (finding the words of the contract should be given their plain meaning according to common usage, and strained constructions should be avoided.).

There is no doubt in this case that Ms. Vaughn's two racial discrimination claims and two tort claims have nothing to do with the contract terms and thus have nothing to do with classic issues of contract construction. To support its argument that Ms. Vaughn's claims are contractual and thus implicate issues of contract construction, Chase argues that a reading of the arbitration provision establishes that the "any related services" language clearly covers Plaintiff's claims because they directly relate to [her] use of [Chase's] services." *See* Brief at 18. It is unclear how racial discrimination, defamation, and emotional distress could be related to any service that Chase provides.

Chase further argues that "Several other courts faced with the same arbitration provision presented in this case have underscored the presumption of arbitrability." *See* Brief at 23. Here, Chase cites the language from *Curtis v. JPMorgan Chase Bank, N.A.*, which states, "by their unambiguous terms, the arbitration clauses encompass Plaintiffs' claims" as the "claims unambiguously relate to '[Plaintiffs'] account[s] or transaction[s]." *Curtis v. JPMorgan Chase Bank, N.A.*, No. 22 CIV. 10286 (LGS), 2024 WL 283474, at *6 (S.D.N.Y. Jan. 25, 2024). In *Curtis*, however, the allegations differ from the allegations in this case. In *Curtis*, the plaintiffs alleged that Defendants failed to refund them for losses incurred when unauthorized Zelle payments were made from their Chase accounts. *Id*. at *1. These allegations directly relate to the plaintiffs' Chase accounts because their allegations were not only

financial, but spoke directly to the plaintiffs' business relationship with Chase. Thus, the arbitration clause in *Curtis* encompassed the plaintiffs' claims as the claims themselves unambiguously related to the plaintiffs' accounts or transactions with Chase. In this case, however, Ms. Vaughn did not make any allegations about her Chase account or her rights and obligations under the DAA. Instead, she alleged racial discrimination, emotional distress, and defamation, none of which relate to her account.

It was not the intention of either party to sweep such claims into the DAA's arbitration provision. If Chase did intend the DAA's arbitration provision to cover the types of claims that Ms. Vaughn is bringing, Chase could have easily done so. The district court cites four cases where customers brought racial discrimination claims against Chase and five instances where this particular Chase branch faced complaints of racial discrimination to further illustrate that Chase could not claim that it did not have notice that racial discrimination claims could be brought. App. at 184-185.

According to the plain language and meaning of the DAA and its arbitration provision, only the claims that relate to Ms. Vaughn's accounts or transactions can be submitted to arbitration. Ms. Vaughn's claims do not relate to either her account or any transaction.

## II.    Ms. Vaughn's Claims Do Not Arise Out of the Deposit Account Agreement

The FAA governs an arbitration agreement only to the extent that it compels arbitration of "controvers[ies]" that "aris[e] out of" the "contract" containing the arbitration agreement or the "transaction" evidenced thereby. 9 U.S.C. § 2. A dispute "does not arise out of or in connection with a contract" for the purposes of arbitration "just because the dispute would not have arisen if the contract had never existed." *Int'l Underwriters v. Triple I: Int'l Inv. Inc.*, 533 F.3d 1342, 1347 (11th Cir. 2008).

In *Communication Workers of America v. Avaya, Inc.*, the plaintiff, Avaya, appealed to the Tenth Circuit a district court's ruling compelling arbitration of its labor dispute with the Communication Workers of America ("CWA") over the legal status of a class of Avaya employees called "backbone engineers." 693 F.3d 1295, 1301 (10th Cir. 2012). The CWA claimed the collective bargaining agreement between the parties required any dispute over the legal status of "backbone engineers" to be resolved in arbitration, while Avaya claimed the parties did not consent to arbitrate their legal status in arbitration. *Id*. The Tenth Circuit found that the record provided forceful evidence that the parties did not contractually consent to arbitrate these particular disputes because it was neither "clear" nor "unmistakable" that this dispute arose under the contract. *Id*. at 1303.

Here, Chase argues that the district court erred in finding that the allegations asserted in the Complaint fell outside of the arbitration provision. *See* Brief at 11.

Chase also argues that "Plaintiff's Section 1981 and CADA claims both arise from and relate to the DAA and concern Plaintiff's account, as each claim concerns transactions involving the account and customer service interactions." *Id*. at 12. The district court disagreed with both arguments. *See* App. at 174. As the district court correctly concluded, Ms. Vaughn's claims of racial discrimination, defamation, and emotional distress "have little or nothing to do with Plaintiff's Chase account, the terms of the Deposit Account Agreement, or the parties' relationship." *Id*. at 177.

## A.    Ms. Vaughn Did Not have Sufficient Warning Before Committing Her Claims to Arbitration

When determining whether a dispute arises out of an underlying contract for arbitration purposes, some courts generally consider whether the dispute in question was an "immediate, foreseeable result of the performance of contractual duties." *Hearn v. Comcast Cable Comm'ns, LLC*, 992 F.3d 1209, 1213 (11th Cir. 2021). This articulation of foreseeability, much like this Court's "clear" and "unmistakable" articulation, captures the notion that an individual must have sufficient warning before committing claims to arbitration. *Riley Mfg. Co. v. Anchor Glass Container Corp.*, 157 F.3d 775, 780 (10th Cir. 1998). This Court has further held that broad provisions to arbitrate all disputes arising out of or relating to the overall contract do not provide the requisite clear and unmistakable evidence "within the four corners of the Agreement that the parties intended to submit the question of whether an agreement to arbitrate exists to an arbitrator." *Id*.

In this case, Ms. Vaughn could neither foresee nor has Chase provided any clear and unmistakable evidence that the parties intended to submit Ms. Vaughn's racial discrimination claims, or her tort claims to arbitration. Chase argues that a broad arbitration provision like the one in the DAA is presumed to govern such a claim. *See* Brief at 20. To support its assertion, Chase invokes *AT&T Technologies, Inc. v. Communications Workers of America*, a case in which the Supreme Court found that an arbitration clause was broad and only an express provision excluding a specific dispute, or the "most forceful evidence of a purpose to exclude the claim from arbitration," may remove the dispute from consideration in arbitration. *Id*. (citing *AT&T Techs., Inc.*, 475 U.S. at 650). However, Chase failed to disclose further language from the Supreme Court in *AT&T* confirming that a presumption of arbitrability exists only in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *Id*. Here, the arbitration provision in the DAA gives rise to just such positive assurance. Its language is highly susceptible to alternative interpretation, and, quite to the contrary, it stretches the imagination that a reasonable account holder would understand or believe that racial discrimination and similar claims such as defamation and negligent infliction of emotional distress would be a dispute that is covered under the arbitration provision. The language in the arbitration provision

fails to provide sufficient warning contained in the plain language of the provision to guide an objectively reasonable account holder to this conclusion.

**B.     Chase's Counsel Acknowledges that these Types of Claims Do Not Arise Out of the Arbitration Provision**

To further support its assertion that Ms. Vaughn's claims arise from and relate to the DAA and concern Ms. Vaughn's account, Chase argues that each claim concerns transactions involving the account and customer service interactions. *See* Brief at 12. However, Chase seems to want to have its cake and eat it too. This is tellingly illustrated by Chase's own counsel, who, in addition to expressing lack of certainty about what falls within the scope of the DAA, also conceded that if an employee acts "outside the scope of employment," then such claims would not be subject to arbitration. Excluding customers from places of accommodation or declining to enter into contracts for goods or services is, as a matter of law and public policy, by definition beyond the scope of employment.

In the November 14, 2024, Scheduling Conference, the Magistrate Judge posed a hypothetical to Chase's Counsel asking her if somebody came into the bank to perform a transaction and the teller for some reason smacks them, would the assault be subject to the arbitration provision. *See Suppl. App.*, at 12-14. Chase's Counsel acknowledged that the teller would be acting outside the scope and course of their employment. *Id*. In other words, an assault does not involve a transaction or a customer service interaction if the assault would fall outside the scope and course

of their employment. The Magistrate Judge responded to Chase's Counsel by stating, "Well, similarly, in modern America one would hope that for no reason a branch manager wouldn't ask an African American person to leave and tell them that they're not welcome there…" *Id*.

Nonetheless, Chase now continues to argue that Ms. Vaughn's claims involve the account and customer service interactions. "Plaintiff's Section 1981 and CADA claims both arise from and relate to the DAA and concern Plaintiff's account, as each claim concerns transactions involving the account and customer service interactions." *See* Brief at 12. Chase does not explain how racial discrimination or Ms. Vaughn's associated tort claims concern the account or any customer service interaction except to say that Ms. Vaughn admitted that she was a customer, and that the arbitration provision expressly covers disputes "relating in any way to [her] account or transactions." *Id*. at 26. The district court correctly found that the fact that Plaintiff had an account with Chase is irrelevant because, "Plaintiff was not allowed to even attempt a bank transaction before she was approached and accused of nefarious conduct. Indeed, Defendants acted like Plaintiff was not a customer and had no relationship with Chase." *See* App. at 180.

It was clear to the district court as well as Chase's Counsel that an assault much like racial discrimination, defamation, and emotional distress do not concern transactions involving Ms. Vaughn's account and/or customer service interactions.

It is unclear, however, how Chase could consider racial discrimination a service or a lack thereof.

## C.    Ms. Vaughn Could Still Bring the Claims With or Without the DAA

Chase further argues that without the DAA, Ms. Vaughn would not be able to bring a claim under Section 1981 or CADA. *See* App. at 87-88. However, as the district court again correctly noted, the basis of the claims asserted in Plaintiff's Complaint—racial discrimination, defamation, and negligent infliction of emotional distress—have little or nothing to do with Plaintiff's Chase account, the terms of the Deposit Account Agreement, or the parties' relationship. *Id*. at 177.

The 1991 amendment to the definition of "make and enforce contracts" in Section 1981 extends the reach of the statute to situations beyond the four corners of a particular contract. *Barfield v. Commerce Bank, N.A.*, 484 F.3d 1276, 1277 (10th Cir. 2007). As amended, Section 1981 applies to those situations in which a merchant, acting out of racial animus, impedes a customer's ability to enter into, or enjoy the benefits of, a contractual relationship. *See Christian v. Wal–Mart Stores, Inc.*, 252 F.3d 862, 872 (6th Cir. 2001) (explaining that, in a "commercial establishment" context, liability will attach when a plaintiff "receive[s] services in a markedly hostile manner and in a manner which a reasonable person would find objectively discriminatory"). It follows, then, that to satisfy the foundational pleading requirements for a suit under Section 1981, a retail customer must allege

that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship, by reason of a race-based animus. *See generally, Morris v. Dillard Dep't Stores, Inc.*, 277 F.3d 743, 752-53 (5th Cir. 2001) (rejecting Section 1981 claims where plaintiff left store on her own accord without making any effort to purchase goods or engage in a transaction); *Hampton v. Dillard Dep't Stores, Inc.*, 247 F.3d 1091, 1118 (10th Cir. 2001) (receipt of a coupon insufficient to sustain a claim where plaintiff made no attempt to purchase goods); *Morris v. Office Max, Inc.*, 89 F.3d 411, 414 (7th Cir. 1996) (plaintiffs unable to sustain Section 1981 claim where they were denied neither admittance nor service, and not asked to leave the store).

In *Barfield v. Commerce Bank, N.A.*, a bank refused to offer Black men change for a $100 bill because they were not customers of the bank but did not refuse to offer change for a $100 bill to the White men. 484 F.3d at 1277. The Plaintiffs alleged racial discrimination in the impairment of the ability to contract under § 1981. *Id*. at 1277. Defendants argued Plaintiffs proposed exchange was not a contract because it involved no consideration. *Id*. at 1278. This Court held that the transaction proposed by the Plaintiff was a contract of exchange and not merely a gratuitous service provided by the bank, and that the Plaintiff did not need to be an account holder in order to bring a claim under Section 1981. *Id.* at 1279. Like *Barfield*, it does not matter that Ms. Vaughn had signed the DAA and was an account holder because she

was denied service because of her race. Even if Ms. Vaughn had sat down in the bank with the intention of making a contract, Chase cannot deny her service based on her race. *See Garrett v. Tandy Corp.*, 295 F.3d 94, 100-01 (1st Cir. 2002) (to state a claim for a Section 1981 violation, "a retail customer must allege that he was actually denied the ability either to make, perform, enforce, modify, or terminate a contract, or to enjoy the fruits of a contractual relationship"). A Section 1981 claim could also be brought for interfering with a Black person's ability to make a contract. Therefore, the fact that Ms. Vaughn signed the DAA is irrelevant to her Section 1981 claim against Chase.

Ms. Vaughn's claims do not arise out of the DAA because there is no clear and unmistakable articulation, that Ms. Vaughn had sufficient warning before committing her claims to arbitration. Also, Chase's Counsel acknowledged that Ms. Vaughn's claims are not customer service related. Finally, Ms. Vaughn would be able to bring these claims without signing the DAA. Therefore, Ms. Vaughn's claims do not arise out of the DAA.

## III. Chase Has Failed to Provide Evidence that No Genuine Dispute of Facts Exists

Arbitration may not be compelled in this case because a genuine dispute of material fact exists as to whether the plain language of the arbitration provision in the DAA requires arbitration of Ms. Vaughn's discrimination, defamation, and emotional distress claims, and because extrinsic evidence does not establish that

Chase Bank intended to include such claims in the scope of its agreement, let alone

provide objective notice of the scope of its arbitration agreement to account holders.

Although the Federal Arbitration Act ("FAA") provides a procedure for

parties to compel arbitration, "the existence of an agreement to arbitrate is a

threshold matter which must be established before the FAA can be invoked [and the]

party attempting to compel arbitration carries the burden of demonstrating a valid

arbitration agreement." *Fundamental Admin. Servs., LLC*, 504 F.App'x at 698 (10th

Cir. 2012) (internal quotations omitted). If the party seeking arbitration comes

forward with "evidence sufficient to demonstrate an enforceable arbitration

agreement … the burden [] shifts to [p]laintiffs to raise a genuine issue of material

fact as to the making of the agreement." *Vernon v. Qwest Communs. Int'l*, 857

F.Supp.2d 1135, 1148 (D. Colo. 2012) (internal quotations omitted).

When the parties dispute the existence of an agreement to arbitrate, a court

may grant a motion to compel arbitration only if "there are no genuine issues of

material fact regarding the parties' agreement." *Hancock v. Am. Tel. & Tel. Co.*, 701

F.3d 1248, 1261 (10th Cir. 2012) (quotations omitted); *see also Brown v. Dorsey &

Whitney, LLP*, 267 F. Supp. 2d 61, 67 (D.D.C. 2003) (when considering a motion to

compel arbitration, "the appropriate standard of review for the district court is the

same standard used in resolving summary judgment motions pursuant to Fed. R. Civ.

P. 56(c)."); *Aliron Int'l, Inc. v. Cherokee Nation Indus., Inc.*, 531 F.3d 863, 865 (D.C.

Cir. 2008) (noting the defendant's motion to compel arbitration properly assessed under the summary judgment standard). As with summary judgment under the Federal Rule of Civil Procedure 56, courts "should give to the opposing party the benefit of all reasonable doubts and inferences that may arise." *Hancock*, 701 F.3d at 1261; *Aliments Krispy Kernels, Inc., v. Nichols Farms*, 851 F.3d 283, 288-89 (3rd Cir. 2017) (courts should "apply the relevant state contract law to questions of arbitrability, which may be decided as a matter of law only if there is no genuine issue of material fact when viewing the facts in the light most favorable to the nonmoving party.").

Chase incorrectly states that the district court used the witness declarations filed as exhibits alongside its Motion to support its findings that there is no evidence to show that Chase intended to require customers to arbitrate racial discrimination and similar such claims. *See* Brief at 28. Chase further argues that because the arbitration provision is unambiguous that the district court should have looked to the plain language of the arbitration provision and should not have looked outside of the four corners of the provision. *Id.*, at 29. It is true that, under Colorado law, "written contracts that are complete and free from ambiguity will be found to express the intention of the parties and will be enforced according to their plain language." *USI Props. E., Inc. v. Simpson*, 938 P.2d 168, 173 (Colo. 1997) (en banc). However, Chase's arbitration provision is anything but unambiguous with respect to which

claims are subject to arbitration as the plain language of the provision shows and Chase's own statements to the district court further indicate, and Ms. Vaughn never intended to arbitrate these types of claims. Chase argues that "because the DAA is unambiguous, the plain text of the agreement governs—and that plain text is decidedly broad." Brief at 30. But Chase stating as much does not render the agreement unambiguous. And regardless of how broad Chase claims the DAA provisions are, there is no evidence to suggest that disputes that relate to a customers' accounts or transactions would encompass racial discrimination, defamation, or emotional distress claims.

The Court did not base its findings on extrinsic evidence, although considered the lack of supporting evidence contained in those witness statements to further support its findings. Chase included a number of witness declarations, only one of which provides this Court, as exhibits demonstrating that Ms. Vaughn, "assented to the DAA's arbitration provision by her continual use of her Chase account." *See* App. at 84. Chase also used these witness declarations to claim that Ms. Vaughn had the opportunity to opt out of the DAA provision, but declined to do so, further signaling her assent. *Id*. The district court simply explains in her decision that the witness declarations produced by Chase are further proof that Ms. Vaughn should be bound by the arbitration provision did not include any evidence that Chase intended to include Plaintiff's claims within the purview of the arbitration provision and further

concluded that the plain text of the DAA governs. *See* App. at 183. The District Cout then looked to the plain text and found, "Despite the broad language of the arbitration provision at issue, Plaintiff's claims do not arise from or relate to the Deposit Account Agreement. *Id*. at 185.

Chase has not produced evidence demonstrating an enforceable arbitration agreement exists with respect to Ms. Vaughn's specific claims and given the language of the arbitration provision and its context within the DAA, a dispute of material fact remains, militating against compelling arbitration under governing precedence. A genuine issue of material fact exists as to whether Ms. Vaughn's claims arise out of the DAA making it unsuitable to send to arbitration. As the district court correctly noted, none of Ms. Vaughn's claims require that she enter into the DAA, indeed they "have little or nothing to do with Plaintiff's Chase account, the terms of the Deposit Account Agreement, or the parties' relationship." *Id.* at 177. Chase argues that because the arbitration provision encompasses "any dispute relating in any way to your account or transactions" that the district court erroneously found that Ms. Vaughn's claims fall outside the scope of this broad provision. *See* Brief at 28. However, the district court properly found that there is no evidence of the purported scope of Chase's provision and without any evidence that Chase intended to include Ms. Vaughn's claims within the purview of the arbitration

provision, the plain text of the DAA governs, and the plain text does not mandate arbitration. *See* App. at 185.

## CONCLUSION

This case arises from the racial discrimination Ms. Vaughn encountered when she entered the Chase Bank on June 9, 2022, and was confronted by Ms. Pelech. Chase has failed to demonstrate how Ms. Vaughn's racial discrimination claims and associated tort claims would compel arbitration. The DAA lacks any clear and unmistakable articulation that the parties intended to submit these types of claims to arbitration therefore Ms. Vaughn's claims do not arise out of Chase's DAA. Additionally, Chase has failed to offer any evidence to show an enforceable arbitration agreement exists.

For all the reasons set forth herein, Ms. Vaughn respectfully requests that this Court affirm the district court's order denying Chase's Motion to Stay Discovery and Compel Arbitration.

## STATEMENT REGARDING ORAL ARGUMENT

Plaintiff requests oral argument. Appellee believes that argument would be helpful to address the Court's questions.

*s/ Crist Whitney*
Crist Whitney
Iris Halpern
2701 Lawrence Street
Denver, Colorado 80205
303-578-4400

cw@rmlawyers.com
ih@rmlawyers.com

*Attorneys for Plaintiff-Appellee*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMITS

1.  This document complies with the word limit of Fed. R. App. R. 5(c)(1) because, excluding the parts of the document exempted by Fed R. App. 32(f): this Brief contains 7,895 words.

2.  This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fe. R. App. P. 32(a)(6) and 10th Cir. R. 32(a) because this document has been prepared in a proportionally spaced typeface using Microsoft Word in Time New Roman 14-point font.

Dated: May 28, 2024

RATHOD | MOHAMEDBHAI LLC

*s/ Crist Whitney*
Crist Whitney

*Attorney for Plaintiff-Appellee*